UNITED STATES of America,
Plaintiff–Appellee,

v.

Martha Marie MANION, aka Mary
Peters, Defendant–Appellant.

No. 01–50562.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 2002.

Filed Aug. 14, 2003.

Michael Ian Garey, Santa Ana, CA, for the defendant-appellant.

Edward R. McGah, Jr., Assistant United States Attorney, Santa Ana, CA, for the plaintiff-appellee.

Before BROWNING, KOZINSKI, and WARDLAW, Circuit Judges.

## OPINION

PER CURIAM:

Martha Manion was convicted of mail and wire fraud for knowing participation in a fraudulent telemarketing scheme. She claims she was improperly convicted because the government was required to show that she *devised* the fraudulent scheme, or the court was required to instruct the jury on co-schemer or aiding and abetting liability. We conclude the jury was properly instructed on the standard for liability under the mail and wire fraud statutes, and that there was sufficient evidence to convict Manion for her own fraudulent acts as a knowing participant in the scheme. Since we also reject her other claims of error, we affirm.

## I. Facts and Procedural History

Manion was originally indicted on six counts of mail and wire fraud, and aiding and abetting mail and wire fraud, under 18 U.S.C. §§ 1341, 1343, and § 2. The indictment alleged that Manion knowingly participated in a fraudulent telemarketing scheme as a salesperson for Pacific West Concepts ("PWC").

PWC purported to be a legitimate business selling magazines by phone that offered potential customers a chance to enter a sweepstakes contest, with no obligation to purchase magazines. Its real business consisted of telephoning elderly people, falsely leading them to believe they had won valuable prizes, and convincing them to send PWC hundreds of dollars in "processing fees" to claim their prizes. In just over a year PWC obtained approximately $400,000 from nearly 700 victims, but only a fraction received prizes (generally of little value) or magazines.

Manion was charged with personally defrauding three victims by falsely leading them to believe they had won valuable prizes and inducing them to mail large checks to PWC. At trial, several victims testified that they received phone calls from PWC and spoke to a woman identifying herself as "Mary Peters" (the name Manion used during sales calls). Though they sent checks for hundreds of dollars to PWC at "Mary's" urging, they never received magazines or the promised prizes.

PWC's owner identified Manion as the company's top salesperson. The owner and Manion's manager both claimed they often overheard Manion and other PWC employees guarantee big prizes without revealing the actual odds of winning, without mentioning magazines, and without informing the people they called that they had no obligation to buy anything in order to participate in the sweepstakes. Both also reported discussing with Manion ways to avoid attracting law enforcement attention to their activities.

At the close of the evidence, the prosecution sought jury instructions only on the elements of mail and wire fraud, withdrawing instructions on liability for aiding and abetting on the grounds that the charges involved Manion's own conduct, not the conduct of others. The jury found Manion guilty of all six counts of mail and wire fraud. She was sentenced to pay restitution and serve forty-five months imprisonment and three years supervised release concurrently on each count.

Manion challenges the jury instructions, sufficiency of the evidence, and her sentence.

## II. Liability for Knowing Participation in a Mail or Wire Fraud Scheme

The jury was instructed that it had to find beyond a reasonable doubt that Manion, acting with intent to defraud, "made up *or knowingly engaged*[1] in a scheme or plan for obtaining money or property by making false promises or statements" involving use of the mails or wires. Noting that the mail and wire fraud statutes use the language "[w]hoever, having *devised or intending to devise* any scheme or artifice to defraud" uses the mails or wires to execute such a scheme, *see* 18 U.S.C. §§ 1341, 1343 (emphasis added), Manion claims the government was required to prove that she devised—not just knowingly participated in—the fraudulent scheme alleged, or the court was required to instruct the jury on conspiracy, aiding and abetting or co-schemer liability principles.

---

1. Manion does not challenge the use of the phrase "knowingly engaged" as opposed to "knowingly participated." We see no substantive difference between the two terms and use them interchangeably.

Since the jury was not so instructed, and the government concedes there was no evidence that Manion devised the scheme, Manion urges us to overturn her conviction.

## A. Jury Instructions

■ We review de novo whether jury instructions accurately define the elements of a statutory offense. *United States v. Summers,* 268 F.3d 683, 687 (9th Cir.2001). If the elements are accurately defined, the district court's "precise formulation" of the jury instructions is reviewed for an abuse of discretion. *Id.; United States v. Dixon,* 201 F.3d 1223, 1230 (9th Cir.2000).

■ The elements of mail and wire fraud are: (1) proof of a scheme or artifice to defraud, and (2) using or causing the use of the mails or wires in order to further the fraudulent scheme. *United States v. Munoz,* 233 F.3d 1117, 1129 (9th Cir.2000); *see also United States v. Lothian,* 976 F.2d 1257, 1262 (9th Cir.1992) (noting that the elements of mail and wire fraud are the same). The government must show specific intent to defraud, *Munoz,* 233 F.3d at 1129, but contrary to Manion's assertion, the intentional *devising* of a scheme is not an essential element of mail or wire fraud. In this circuit, "[i]n order to sustain a conviction under the federal mail fraud statutes, it is not necessary that the defendant be the mastermind of the operation, but it is necessary to show willful participation in a scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved." *United States v. Price,* 623 F.2d 587, 591 (9th Cir.1980), *overruled on other grounds by United States v. De Bright,* 730 F.2d 1255 (1984). *See also United States. v. Hanley,* 190 F.3d 1017, 1022–24 (9th Cir.1999) (holding a salesperson liable for both wire fraud and conspiracy to commit wire fraud where the salesperson participated in the scheme, but did

not devise it), *superseded on other grounds by* U.S.S.G. § 2S1.1 (2001); *United States v. Blitz,* 151 F.3d 1002, 1006 (9th Cir.1998) (finding telemarketer liable for his own acts of knowing participation in scheme devised by others). In fact, "[i]t has long been settled, contrary to the defendant's construction of the statute, that anyone who 'knowingly and intentionally' participates in the execution of the fraudulent scheme comes within the prohibition of the [mail and wire fraud] statute[s]" regardless of whether the defendant devised the scheme. *United States v. Perkal,* 530 F.2d 604, 605–06 (4th Cir.1976); *see also United States v. Prows,* 118 F.3d 686, 692 (10th Cir.1997) (same). Thus, the government did not need to prove and it was not necessary to instruct the jury that Manion must have devised the scheme to convict her of mail or wire fraud.

■ Moreover, since the government sought to convict Manion for *her own acts* of mail and wire fraud, the government did not need to rely on nor did the court need to instruct the jury on co-schemer, conspiracy or aiding and abetting theories. We note that a "knowing participant" in a fraudulent scheme may be held liable both for his or her own acts of mail or wire fraud *and* be held vicariously liable for the acts of co-schemers. *See Blitz,* 151 F.3d at 1006 (holding defendant Hall liable for both his own acts of fraud and those committed by co-schemers); *United States v. Stapleton,* 293 F.3d 1111, 1117 (9th Cir. 2002) ("A knowing participant in a scheme to defraud is vicariously liable for substantive acts of mail fraud or wire fraud committed by co-schemers"). But where, as here, an individual is charged with liability only for his or her own substantive acts of mail or wire fraud, the government must prove only the existence of "a scheme or artifice to defraud" and that the defendant knowingly "us[ed] or caus[ed] the use of

the mails in order to further the fraudulent scheme." *Munoz*, 233 F.3d at 1129; *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir.1979); *see also Blitz*, 151 F.3d at 1006 (applying co-schemer liability principles only with respect to defendant's liability for his "co-schemers' use of the mails or wires," not for his own acts); *United States v. Mitchell*, 744 F.2d 701, 704 (9th Cir.1984) (no conspiracy charge or instruction on concerted activity needed to convict defendant of knowingly participating in mail fraud scheme).

Thus, the jury was properly instructed that Manion could be convicted of mail and wire fraud for acts she committed herself if it found there was a scheme to defraud and Manion knowingly participated in it. *See id.*[2]

## B. Sufficiency of Evidence

 Because the government was not required to show that Manion devised the scheme, we consider only Manion's claim that the evidence was insufficient to convict her for knowing participation in the PWC scheme. We review the sufficiency of evidence de novo, *United States v. Duran*, 189 F.3d 1071, 1078 (9th Cir. 1999), and must affirm the conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bautista–Avila*, 6 F.3d 1360, 1362 (9th Cir. 1993) (citation and internal quotation marks omitted).

The evidence presented at trial was sufficient to show the existence of the fraudulent scheme alleged. Both PWC's owner and Manion's manager admitted that though PWC was supposed to be in the business of selling magazines, it was actually engaged in a fraudulent business involving sweepstakes promotions that targeted vulnerable victims. They explained that PWC's sales tactics involved misleading these victims into thinking they had won large prizes and had to send PWC money for a so-called "processing fee." They testified that they overheard Manion and other employees do just that, and this scenario was confirmed by the victims.

The evidence presented was also sufficient to show that Manion committed each fraudulent act charged against her and knowingly participated in this scheme. Manion's manager testified that PWC's records reflected that Manion (with another PWC employee) telephoned the victims named in the indictment and convinced them to send checks to PWC. Manion admitted doing so. The victims also provided extensive testimony on her sales tactics and fraudulent acts.

There was other evidence that Manion knew that the business was not legitimate and knowingly participated in the scheme. PWC's owner and her manager asked her not to re-target people because of the danger of attracting law enforcement attention to their activities. Manion and other PWC employees admitted that they knew very few prizes were ever sent out, and that the "big prize" was never awarded. Manion was given a disclaimer and odds of winning, but the owner claimed he told Manion not to mention them during calls be-

---

**2.** The jury was also instructed that it could find a scheme to defraud existed even if the statements involved in the scheme were not literally false, but were "misleading and deceptive," based on "half-truths and concealment of material facts." Contrary to Manion's claim, this instruction was both accurate and consistent with the indictment, which charged that the scheme to defraud was also premised on the concealment of material facts. *See Munoz*, 233 F.3d at 1131. We do not consider whether the elements of mail and wire fraud were accurately instructed in other respects since Manion raises no additional challenges to these instructions.

cause they were not part of the company's sales tactics, and said that Manion indicated her agreement; her victims also testified that she did not mention these facts.

Viewing the evidence in the light most favorable to the prosecution, we conclude there was sufficient evidence for a rational juror to find beyond a reasonable doubt that there was a fraudulent PWC scheme, and Manion knowingly participated in it as charged. *See United States v. Bautista–Avila,* 6 F.3d at 1362; *Munoz,* 233 F.3d at 1129. There was no prejudicial variance between the scheme and acts alleged in the indictment and the proof adduced at trial.

### III. Remaining Claims

We have carefully reviewed Manion's other challenges to her conviction and sentence and find no error.

### IV. Conclusion

The judgment of the district court is AFFIRMED.