**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10065 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 4:14-cr-01187-RM-LAB-1 |
| JOSE RENE RIVERA, AKA Jose Rivera, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10068 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 4:14-cr-01187-RM-LAB-2 |
| JOAQUIN MORENO, | |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-10132 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 4:14-cr-01187-RM-LAB-3 |

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

GAMALIEL CAMPANA MORENO,

Defendant-Appellant.

Appeals from the United States District Court
for the District of Arizona
Rosemary Marquez, District Judge, Presiding

Argued and Submitted March 17, 2017
San Francisco, California

Before:  TALLMAN and WATFORD, Circuit Judges, and GUIROLA,[**] Chief District Judge.

1.  Defendants challenge the sufficiency of the evidence supporting their convictions for mail fraud and conspiracy to commit mail fraud under 18 U.S.C. §§ 1341, 1349.  Viewing the evidence in the light most favorable to the government, as we must, we conclude that a rational trier of fact could have found defendants guilty of these offenses beyond a reasonable doubt.  *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc).

Sufficient evidence supports the jury's conclusion that defendants intended to defraud the FEMA FloodSmart reimbursement program.  A rational trier of fact could have concluded that defendants created a sham magazine, which was never

---

[**]    The Honorable Louis Guirola, Jr., Chief United States District Judge for the Southern District of Mississippi, sitting by designation.

distributed, for the sole purpose of securing reimbursements from the FloodSmart program. Other than the advertisements for flood insurance, the magazine contained only unauthorized advertisements for high-end luxury goods and unlicensed articles from an online content producer. The flood insurance advertisements, which netted defendants over $100,000 in FEMA reimbursements, were the only source of income for the magazine. Even though defendants presented evidence that they printed over 1,000 copies of the magazine and had incurred expenses traveling to different cities in Arizona, a rational trier of fact could nonetheless have concluded that the magazine was never distributed. Not a single insurance agent who testified had ever seen a copy of the magazine in their community and none had been contacted by any prospective customers who had seen the advertisements. Furthermore, defendants incurred the travel expenses after the police had been tipped off about the scheme, a fact that could have caused a rational jury to doubt the legitimacy of those expenditures.

The jury rationally rejected defendants' cost-sharing theory based on the evidence presented at trial. Under defendants' cost-sharing theory, there would have been no reason to misrepresent the price of the advertisements. But the contracts submitted to the government listed the price of the advertisements at $15,000, while the media kit later obtained by the reimbursement program

administrator listed the price at only $10,000.  And rather than listing $4,000 or $5,000 as a discount or in some way noting that the magazine was absorbing that cost, the contracts falsely stated that insurance agents had already paid for that portion of the advertisement.

Sufficient evidence also supports the jury's conclusion that defendants' representations concerning the listed price of the advertisements and the amounts supposedly pre-paid by the insurance agents were material.  The FEMA program administrator testified that these representations were capable of influencing her reimbursement decision.  *See United States v. Lindsey*, __ F.3d __, 2017 WL 744048, at *3 (9th Cir. Feb. 27, 2017); *United States v. Blixt*, 548 F.3d 882, 888–89 (9th Cir. 2008).  She obtained a rate card to check the accuracy of the advertisement rates, which demonstrates that the price of the advertisements was material in determining the reimbursement rate.  Furthermore, she testified that if she had known that the insurance agents had not paid anything for the advertisements, it would have affected whether she issued a reimbursement and how much to reimburse.  From this evidence, the jury rationally concluded that defendants intended to defraud the government and did so by making material misrepresentations in the contracts submitted for reimbursement.

**2.** Sufficient evidence supports the jury's conclusion that Gamaliel Campana Moreno knowingly participated in the scheme to commit mail fraud. *See United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003) (per curiam). Moreno sold advertisements to at least five insurance agents. These agents testified that Moreno led the sales meetings, understood the reimbursement program, told them that the advertisements would not cost them anything, and filled out the contracts which represented—falsely—that $4,000 to $5,000 had been pre-paid by the insurance agents. These facts are sufficient to establish Moreno's knowing participation in the scheme.

**3.** The district court did not abuse its discretion by ordering restitution in the amount of $135,000. Restitution under the Mandatory Victims Restitution Act, 18 U.S.C. § 3664(f)(1)(A), must reflect the victim's actual loss, *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010), so if the advertisements had any value to the government, that amount would need to be offset against the restitution award. Defendants argue that the advertisements did have at least some value and that the restitution award should take that value into account so that the government does not receive a windfall. But the district court could reasonably have concluded here that the advertisements were in fact worthless, given the absence of credible evidence that the magazine was ever distributed. Additionally,

because forfeiture and restitution serve different goals, the district court did not err by requiring defendants to pay both restitution and forfeiture. *See United States v. Davis*, 706 F.3d 1081, 1083–84 (9th Cir. 2013).

**4.** The district court did not clearly err when calculating intended loss. Intended loss must be reduced by the fair market value of any services rendered, *United States v. Blitz*, 151 F.3d 1002, 1012 (9th Cir. 1998), but, as just noted, the district court reasonably could have concluded that the advertisements purchased by FEMA were worthless. *See United States v. Cooper*, 173 F.3d 1192, 1206–07 (9th Cir. 1999).

**5.** The district court did not clearly err in finding that Rivera exercised some degree of control or organizational authority over other participants in the scheme. U.S.S.G. § 3B1.1; *United States v. Bonilla-Guizar*, 729 F.3d 1179, 1186 (9th Cir. 2013). Rivera was one of the principals of the company, received more money from the scheme than the other participants, and was the only participant who spoke directly with the FEMA administrator about the reimbursement program. These facts support the district court's imposition of a three-level enhancement for role in the offense.

**AFFIRMED**.