**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOHN ANTHONY WILLIAMS,
*Defendant-Appellant.*

No. 05-30071

D.C. No.
CR-03-60104-HO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Argued and Submitted
January 12, 2006—Portland, Oregon

Filed March 21, 2006

Before: Diarmuid F. O'Scannlain, Andrew J. Kleinfeld, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Ruben L. Iniguez, Assistant Federal Public Defender, Portland, Oregon, for the defendant-appellant.

Christopher L. Cardani, Assistant United States Attorney, Eugene, Oregon, for the plaintiff-appellee.

## OPINION

GRABER, Circuit Judge:

Defendant John Anthony Williams appeals his conviction and sentence for mail and wire fraud and money laundering.

His main argument is that the government improperly charged him under an "intangible rights" theory of mail and wire fraud, because that theory does not apply to private individuals, and that the absence of a special verdict makes it impossible to determine whether the jury found "direct" fraud or "intangible rights" fraud. Since Congress passed 18 U.S.C. § 1346, we have not addressed directly whether the "intangible rights" theory applies to private-sector fraud. We hold that, under 18 U.S.C. §§ 1341 and 1343, the "intangible rights" theory applies to private-sector fraud, at least where (as here) the defendant has a fiduciary duty to the victim. Because the government correctly charged Defendant under both an "intangible rights" and a "direct" theory of fraud, the general verdict stands.

Defendant also challenges his conviction and sentence on four other grounds: (1) 18 U.S.C. § 1346 is unconstitutionally vague as applied because Defendant would not reasonably expect it to apply to a private individual; (2) Count 12, charging Defendant with foreign transportation of stolen money, failed to state an offense because Defendant did not personally transport the money in question to Belize; (3) the district court violated the Ex Post Facto Clause and Defendant's due process rights by sentencing him pursuant to *United States v. Booker*, 543 U.S. 220 (2005), when the jury rendered its verdict before the Supreme Court decided *Booker*; and (4) the district court erred by finding the facts underlying a "vulnerable victim" sentencing enhancement. In response to those arguments, we hold: (1) 18 U.S.C. § 1346 is not unconstitutionally vague as applied because a person of ordinary intelligence would know that it is a crime for a licensed financial planner to cause his client to sign a power of attorney in his favor and then, by using the mail and wires, employ the power of attorney to steal hundreds of thousands of dollars from the client; (2) Count 12 stated an offense because it is sufficient for the defendant to have *caused* the transportation of stolen money to a foreign country; (3) *United States v. Dupas*, 419 F.3d 916 (9th Cir. 2005), has resolved Defen-

dant's *Booker* arguments against him; and (4) the district court did not clearly err by finding that the victim, who was 87 years old, financially inexperienced, and suffering from the loss of a close family member, was vulnerable. Accordingly, we affirm the conviction and the sentence in all respects.

### FACTUAL AND PROCEDURAL BACKGROUND

From 1993 to 2003, Defendant John Anthony Williams worked as a self-employed insurance seller and licensed financial planner. In 1998, Oregon financial services company Waddell & Reed hired Defendant as a commissioned sales agent. That year, he sold an $88,000 annuity to victim Loyd Stubbs. Later in 1998, Stubbs inherited $92,000 as the beneficiary of his brother Verlin's life insurance policy. Stubbs and Verlin had been partners in a sheep ranch. Verlin managed the finances and Stubbs, who had only an eighth-grade education, provided the labor. The two brothers were close. Stubbs was 87 years old when Verlin died. Defendant advised Stubbs to consolidate all of his financial holdings, totaling approximately $198,000, into one account, which he did. The bank then transferred the account to Waddell & Reed.

In 1999, Stubbs bought another $437,960.21 in annuities through Defendant. In July 1999, at Defendant's instruction, Stubbs signed a durable power of attorney naming Defendant as his agent. On the same day, and without Stubbs' knowledge, Defendant opened a private mailbox in Stubbs' name. The next day, by means of the power of attorney, Defendant opened a joint bank account in the names of Stubbs and Defendant. He also presented Stubbs with surrender forms for three of Stubbs' annuities. Defendant used the surrender forms to liquidate Stubbs' annuities and deposited the resulting funds in the joint bank account.

Soon thereafter, Defendant spent $35,000 of Stubbs' money on Defendant's personal expenses. In August 1999, Defendant wrote two checks from the joint bank account to

"Cash," one for $300,000 and the other for $70,000. Defendant deposited the cash in his personal bank account.

Defendant then opened a bank account with the Bank of Belize and started a shell corporation in Belize. Defendant wire-transferred Stubbs' money from Defendant's personal account to his accounts in Belize and in Baton Rouge, Louisiana.

Defendant and his wife moved to Belize and used Stubbs' money to buy a condominium. In 2000, Defendant returned to Oregon and wire-transferred $80,000 from the Belize account back to his personal account in Oregon.

Thereafter, the grand jury in Oregon issued an indictment against Defendant, charging him with four counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, three counts of mail fraud in violation of 18 U.S.C. § 1341, two counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, and two counts of money laundering in violation of 18 U.S.C. §§ 1957 and 2. In a superseding indictment, the government added one count of foreign transportation of stolen money in violation of 18 U.S.C. §§ 2314 and 2, and amended each of the mail and wire fraud charges to include references to 18 U.S.C. § 1346.

After a three-day trial, a jury convicted Defendant of all charges except one count of money laundering. The district court sentenced Defendant to 51 months in prison plus three years of supervised release. It also ordered Defendant to pay $450,223.82 in restitution and a $1,100 special assessment. At sentencing, the court found that Stubbs qualified as a "vulnerable victim" and applied an enhancement to the advisory Guidelines sentence. Defendant now brings this timely appeal.

## DISCUSSION

A. *Defendant's conviction under the "intangible rights" theory embodied in 18 U.S.C. § 1346*

    1. *The "intangible rights" theory can apply in a private commercial setting.*

**[1]** In the original indictment, the government charged Defendant with mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively. Section 1341 provides in part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . , places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

Section 1343 states, as relevant:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign

commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Both sections codify a "direct" theory of fraud in which the object of the fraudulent scheme is to obtain money or other tangible property.

**[2]** The superseding indictment added a reference to 18 U.S.C. § 1346 in each of the seven fraud counts. Section 1346 states:

For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

Section 1346 thus codifies an "intangible rights" theory of fraud. Under this theory, the object of the fraudulent scheme is the victim's intangible right to receive honest services.

The government charged Defendant under both fraud theories in the alternative. The jury returned a general verdict of guilty on all seven fraud counts. Neither party requested a special verdict form, so the jury did not specify the theory of fraud on which it relied, nor did it specify whether it reached unanimity on either or both of the two theories.

Defendant argues that the "intangible rights" theory of fraud does not apply to private individuals. Therefore, he argues, in the absence of a special verdict confirming that the jury found him guilty of violating 18 U.S.C. §§ 1341 and 1343 through "direct" fraud, his fraud convictions must be vacated under the principles announced in *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled in part on other grounds by Burks v. United States*, 437 U.S. 1 (1978).

**[3]** *Yates* involved a single-count federal indictment against the defendants, which charged them with conspiracy "(1) to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) to organize, as the Communist Party of the United States, a society of persons who so advocate and teach." *Id.* at 300. The Court held that the term "organized" in this context referred to the initial formation of the party. *Id.* at 310-11. This holding rendered the "organizing" object of the conspiracy charge legally insufficient on statute of limitations grounds. *Id.* at 312. The Supreme Court then applied the rule of *Stromberg v. California*, 283 U.S. 359, 367-68 (1931), and held: "In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates*, 354 U.S. at 312.

**[4]** In *Griffin v. United States*, 502 U.S. 46, 55 (1991), the Court noted:

> *Yates*, however, was the first and only case of ours to apply *Stromberg* to a general verdict in which one of the possible bases of conviction did not violate any provision of the Constitution but was simply legally inadequate (because of a statutory time bar). As we have described, that was an unexplained extension, explicitly invoking neither the Due Process Clause (which is an unlikely basis) nor our supervisory powers over the procedures employed in a federal prosecution.

Despite that negative commentary, *Griffin* did not provide the Court with an opportunity to reevaluate *Yates*. Thus, *Yates* remains the controlling rule. *See United States v. Fulbright*, 105 F.3d 443, 451 (9th Cir. 1997) ("Where a jury returns a general verdict that is potentially based on a theory that was *legally impermissible* or *unconstitutional*, the conviction can-

not be sustained" because "jurors, as non-lawyers, cannot be expected to eliminate the legally impermissible option."). We must, therefore, decide whether 18 U.S.C. § 1346 provides a legally sufficient ground for the fraud counts. We review de novo the district court's holding. *United States v. Frega*, 179 F.3d 793, 802 n.6 (9th Cir. 1999).

The "intangible rights" theory has been a subject of controversy in the history of the federal mail and wire fraud statutes. Before 1987, this circuit, among others, interpreted §§ 1341 and 1343 to proscribe two categories of fraudulent "schemes." *United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980). The first included schemes to deprive others of *tangible* property interests, and the second included schemes to deprive others of *intangible* rights. *Id.*

In 1987, the Supreme Court decided *McNally v. United States*, 483 U.S. 350 (1987). *McNally* effectively limited the scope of the fraud statutes by holding that §§ 1341 and 1343 "protect[ ] property rights, but do[ ] not refer to the intangible right of the citizenry to good government." *Id.* at 356. Defendant argues that § 1346 is *exclusively* a "public corruption" statute that cannot be used to prosecute private individuals for acts of fraud. We disagree.

**[5]** We look, first, at the text of the statute as the best guide to congressional intent. *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994). Neither the words of § 1346 nor its context suggests the public-corruption-only limitation for which Defendant argues. Section 1346 refers, without limitation, to "the intangible right of honest services," and sections 1341 and 1343 contain no special reference to public corruption.

We consider, next, our pre-*McNally* cases because, by overruling *McNally*, Congress restored the pre-*McNally* landscape. *See Frega*, 179 F.3d at 803 (observing "it is clear that Congress reacted, at the Court's invitation, to overrule

*McNally*"). In our pre-*McNally* cases, we applied the intangible rights theory of fraud to *both* public officials *and* private citizens. *See, e.g., United States v. Louderman*, 576 F.2d 1383, 1387 (9th Cir. 1978) (affirming the convictions of two private citizens under § 1343 on the ground that the defendants' actions deprived targeted individuals of their right to privacy and of a service for which they were paying); *see also Bohonus*, 628 F.2d at 1172 (applying the mail fraud statute against a private insurance manager and holding that "a scheme to defraud an employer of loyal service is prohibited under § 1341 provided the mails were used in the furtherance of the scheme and specific intent . . . is shown").

**[6]** Although we have not addressed directly whether the intangible rights theory should still apply to private defendants after the passage of § 1346, other circuits have done so and have found such application appropriate. For example, the Second Circuit in *United States v. Rybicki*, 354 F.3d 124, 127 (2d Cir. 2003) (en banc), upheld the mail fraud and wire fraud convictions of two private lawyers who were giving illegal payments to insurance claims adjusters with the intent of inducing the adjusters to expedite the settlement of certain claims. The court defined "scheme or artifice to deprive another of the intangible right to honest services" in relation to private actors as a

> scheme or artifice to use the mails or wires to enable an officer or employee of a private entity (or a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers) purporting to act for and in the interests of his or her employer (or of the other person to whom the duty of loyalty is owed) secretly to act in his or her or the defendant's own interests instead, accompanied by a material misrepresentation made or omission of information disclosed to the employer or other person.

*Id.* at 141-42 (footnote omitted).

**[7]** The Sixth Circuit, in *United States v. Frost*, 125 F.3d 346, 366 (6th Cir. 1997), held that "private individuals, such as [the defendants who were university professors], may commit mail fraud by breaching a fiduciary duty and thereby depriving the person or entity to which the duty is owed of the intangible right to the honest services of that individual." *Frost*, therefore, refused to reinstate the Sixth Circuit's pre-*McNally* decision of *United States v. Gray*, 790 F.2d 1290 (6th Cir. 1986) (per curiam), *rev'd by McNally*, 483 U.S. 350, which had limited the "intangible rights" theory to the prosecution of public officials. *See also United States v. Vinyard*, 266 F.3d 320, 326 (4th Cir. 2001) (affirming the mail fraud conviction of a private attorney and holding that, "[a]lthough the honest services theory of mail fraud is directed primarily at the deterrence and punishment of corruption among public officials, the courts have consistently recognized the statute's province to encompass dishonest acts perpetrated in private commercial settings"); *United States v. Devegter*, 198 F.3d 1324, 1330 (11th Cir. 1999) (holding that the § 1346 theory applies to private-sector defendants but that such cases must involve a breach of fiduciary duty and reasonably foreseeable economic harm); *United States v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 973 (D.C. Cir. 1998) (holding that the § 1346 theory can support the conviction of a private defendant where "there [is] a failure to disclose something which in the knowledge or contemplation of the employee poses an independent business risk to the employer" (internal quotation marks and alteration omitted)). We follow our sister circuits and hold that the "intangible rights" theory of fraud, as codified by § 1346, can apply to private individuals as well as to public figures.

**[8]** The next step in the inquiry, then, is whether Defendant is the type of private individual who falls within the scope of the statute's provisions. The text of § 1346 reaches, without express limitation, "a scheme or artifice to deprive *another* of

the intangible right of honest services." (Emphasis added.)
The undifferentiated term "another" has led a number of cir-
cuits to question whether Congress really meant to give
§ 1346 unlimited breadth. *See Rybicki*, 354 F.3d at 135 & n.7
(surveying circuit courts' treatments of the issue). At a mini-
mum, we and other circuits have recognized the viability of
the "intangible rights" theory when the private defendant
stands in a fiduciary or trust relationship with the victim of
the fraud. Because Defendant had such a relationship with his
victim, we need not and do not decide whether Congress
intended "another" to reach even further. *See* Or. Rev. Stat.
§ 127.045 (providing that "an attorney-in-fact or agent [under
a power of attorney] must use the property of the principal for
the benefit of the principal").

In *Bohonus*, we recognized that the "intangible rights" the-
ory of fraud most often is applied to cases involving bribery
of public officials. "The requisite 'scheme or artifice to
defraud' is found in the deprivation of the public's right to
honest and faithful government. When a public official is
bribed, he is paid for making a decision while purporting to
be exercising his independent discretion. The fraud element is
therefore satisfied." *Bohonus*, 628 F.2d at 1171. We held,
though, that the same rationale that governs the public
official/constituent relationship also applies in the employee/
employer context. "[D]epriving an employer of one's honest
services and of its right to have its business conducted hon-
estly can constitute a 'scheme to defraud' under § 1341." *Id.*
at 1172.

Although the facts of *Bohonus* did not require us to decide
what other classes of private individuals are subject to prose-
cution under the intangible rights theory of mail and wire
fraud, the opinion suggests that other fiduciary relationships
would qualify. *See id.* (noting that a "breach of a fiduciary
duty, . . . standing alone, [does not] show a § 1341 violation;
there must be a recognizable scheme formed with intent to
defraud"). As the Second Circuit explained in *Rybicki*: "Al-

though the bulk of the pre-*McNally* honest-services cases involved employees, we see no reason the principle they establish would not apply to other persons who assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity." *Rybicki*, 354 F.3d at 142 n.17 (citing precedent from the Second, Eighth, and Tenth Circuits in which the intangible rights theory was applied to various fiduciary relationships).

**[9]** Stubbs employed Defendant as a fiduciary, and Defendant therefore undertook the high duties of honesty and loyalty to him. Specifically, Stubbs hired and relied on Defendant as a financial advisor and estate planner. He entrusted Defendant with large sums of money and signed a durable power of attorney naming Defendant as his agent. In these circumstances, the § 1346 theory underlying the charges against Defendant was legally valid. Because Defendant was a fiduciary, we have no occasion to decide whether the "intangible right of honest services" in § 1346 applies to persons who are not fiduciaries.

    2.   *Because both theories of the prosecution were legally valid, no error resulted from the use of a general verdict.*

**[10]** Whether the prosecution fulfilled its burden to prove that Defendant was guilty under the intangible rights theory is a separate question, and one that we need not reach. " '[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . , the verdict stands if the evidence is sufficient with respect to any one of the acts charged.' " *Griffin*, 502 U.S. at 56-57 (alteration in original) (quoting *Turner v. United States*, 396 U.S. 398, 420 (1970)).

**[11]** The government charged Defendant with "direct" mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, respectively. The government charged Defendant under § 1346 only

as an alternative theory based on the same underlying conduct.

**[12]** The elements of "direct" mail and wire fraud are (1) engaging in a scheme or artifice to defraud and (2) using or causing the use of the mails or wires in order to further the fraudulent scheme or artifice. *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003) (per curiam). Here, Defendant used his position as Stubbs' financial planner to induce Stubbs to award a power of attorney over those assets to Defendant. Defendant used that power of attorney to create a joint bank account in the names of Stubbs and himself, without Stubbs' knowledge. Without informing Stubbs, Defendant transferred Stubbs' assets to the joint bank account and then caused the mails or wires to be used to move the money into Defendant's own accounts in Belize and in Louisiana. That evidence supports Defendant's convictions under §§ 1341 and 1343 for "direct" fraud. Therefore, we affirm his mail fraud and wire fraud convictions.

B.   *Vagueness*

Defendant next argues that 18 U.S.C. § 1346 is unconstitutionally vague as applied to him. On de novo review, *United States v. Carranza*, 289 F.3d 634, 643 (9th Cir. 2002), we disagree.

**[13]** In examining a statute for vagueness, we must determine whether a person of average intelligence would reasonably understand that the charged conduct is proscribed. *United States v. Mazurie*, 419 U.S. 544, 553 (1975). The statute "must be examined in the light of the facts of the case at hand." *Id.* at 550.

**[14]** Defendant took advantage of his position as a financial advisor to gain the trust of 87-year-old Stubbs. In the context of that relationship, he convinced Stubbs to grant him a power of attorney, with which he stole about $400,000 from Stubbs,

using the mails and wires. With Stubbs' money, Defendant paid his own expenses and bought a home for himself and his wife in Belize, all without Stubbs' knowledge. A person of ordinary intelligence would reasonably understand that those actions were proscribed by a statute that criminalizes the use of the mails and wires to perpetrate a fraud.

C.   *Failure to State an Offense*

Count 12 of the superseding indictment charged Defendant with the foreign transportation of stolen money in violation of 18 U.S.C. § 2314. It alleged:

> On or about March 21, 2001, in the District of Oregon and elsewhere, defendant JOHN ANTHONY WILLIAMS, knowingly *caused $80,000 to be transported*, transmitted and transferred, from an account at Belize Bank in Belize, Central America, to an account at Bank of America in Oregon, knowing such funds were stolen, converted and taken by fraud.

(Emphasis added.)

Defendant claims that Count 12 does not state an offense because it charges him with *causing* $80,000 to be transported, instead of charging him with the actual transport of the funds as § 2314 requires. That claim, which we review de novo, *United States v. Enslin*, 327 F.3d 788, 793 (9th Cir. 2003), misperceives the reach of the statute.

[15] The first two paragraphs of 18 U.S.C. § 2314 state:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; *or*

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports *or causes to be transported*, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $ 5,000 or more[.]

(Emphasis added.) The statute expressly encompasses the act of causing stolen funds to be transported in foreign commerce. That being so, Count 12 properly stated a claim under 18 U.S.C. § 2314.

D. *Ex Post Facto*

The Supreme Court issued its decision in *Booker* after the jury returned its verdict in Defendant's case but before the district court imposed sentence. The court sentenced Defendant in compliance with *Booker*. Defendant argues that because his conviction predated *Booker*, his sentencing under *Booker* principles violates the Ex Post Facto and Due Process Clauses. His arguments are foreclosed by *Dupas*, 419 F.3d at 918.

E. *Vulnerable Victim Enhancement*

**[16]** The district court enhanced Defendant's sentence because it found that Stubbs was a "vulnerable victim" within the meaning of the now-advisory United States Sentencing Guidelines, U.S.S.G. § 3A1.1. *See United States v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005) (holding that a district court should still consult the now-advisory Sentencing Guidelines for advice in determining an appropriate sentence). A district court must find that a victim is "vulnerable" by a preponderance of the evidence. *United States v. Dare*, 425 F.3d

634, 642 (9th Cir. 2005). We review such a finding for clear error. *United States v. Veerapol*, 312 F.3d 1128, 1131 (9th Cir. 2002).

**[17]** Stubbs was 87 years old. He had just suffered the death of his brother, with whom he had a close familial and working relationship. He was financially inexperienced and had only an eighth grade education. Although he and his brother co-owned a sheep ranch, Stubbs' brother alone managed the finances of the business while Stubbs provided the labor. On this record, the district court did not clearly err in finding that Stubbs was a vulnerable victim.

AFFIRMED.