**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

                v.

BRANO MILOVANOVIC; TONY GENE
LAMB; ISMAIL HOT; MUHAMED
KOVACIC; ELVEDIN BILANOVIC;
ALEKSANDAR DJORDJEVIC,
            *Defendants-Appellees.*

No. 08-30381

D.C. No.
2:08-cr-00010-EFS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
November 3, 2009—Seattle, Washington

Filed December 3, 2010

Before: Ferdinand F. Fernandez, Andrew J. Kleinfeld, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Kleinfeld;
Dissent by Judge Fernandez

19221

## COUNSEL

James A. McDevitt, United States Attorney, and Timothy M. Durkin, Assistant United States Attorney, United States Attorney's Office, Spokane, Washington, for the appellant.

Robert R. Fisher, Spokane, Washington, for appellee Brano Milovanovic.

Joseph Nappi, Jr., Spokane, Washington, for appellee Tony Gene Lam.

Frank L. Cikutovich, (briefed), Spoken, Washington, for appellee Ismail Hot.

Dan B. Johnson, (briefed), Spokane, Washington, for appellee Muhamed Kovacic.

Curran C. Dempsey, (briefed), Spokane, Washington, for appellee Elvedin Bilanovic.

Gerald R. Smith, (briefed), Spokane, Washington, for Aleksandar Djordjevic.

## OPINION

KLEINFELD, Circuit Judge:

We address "honest services" mail fraud.

### I.   Facts

The district court dismissed the indictment before trial, so we describe the facts as though the indictment had been proved, which of course is not the case. The question is whether the charges, if proved, would amount to the crime charged.

According to the indictment, defendants Milovanovic and Lamb corrupted issuance of commercial drivers' licenses in the State of Washington. The other four defendants, Hot, Kovacic, Bilanovic, and Djordjevic, took advantage of the

corrupt scheme to defraud the State of Washington into issuing them the undeserved licenses. A person has to be a Washington resident and pass a written test and a driving test to lawfully obtain a Washington commercial drivers' license.[1] Milovanovic and Lamb and their clients allegedly arranged to get commercial drivers' licenses by cheating on the tests and falsifying residency, in exchange for bribes.

Milovanovic worked as a certified Bosnian translator for a firm that the state government used. He contacted Bosnian speakers in other states, and told them that if they came to Spokane and paid him personally $2,500, he could get them Washington commercial drivers' licenses. When the out-of-state Bosnians came, Milovanovic enabled them to cheat on the written test by giving them the answers as they took it. Then Milovanovic bribed Lamb, who worked for a firm the state government hired to administer the driving test, $200 to $500 per person to falsify that test result too. The applicants would bring the falsified forms and the State license fee to the State Department of Licensing for a temporary permit, which would be turned into a permanent permit when Lamb mailed or faxed in his falsified log. The licenses were then mailed by a third contractor to the applicants at the false Washington address Milovanovic had supplied.

Lamb and the firm for which Milovanovic worked both had contracts with the state saying that they were independent contractors, not employees and not agents. The state was not deprived of its fee, and did not lose a nickel on account of the

---

[1]Wash. Rev. Code § 46.25.060(1)(a) (2006). *See also* 49 U.S.C. §§ 31305, 31308; 49 C.F.R. § 383.23. Federal regulations allow a state to authorize a third party to administer the driving skill portion of the test as long as the tests "are the same as those which would otherwise be given by the State." 49 C.F.R. § 383.75(a). The third party must also enter into an agreement with the State allowing it and the federal government to conduct audits and inspections to ensure the tests are conducted in accordance with the state's requirements. Wash. Rev. Code § 46.25.060(1)(b) (2006); Wash. Admin. Code § 308-100-140 (2006).

dishonest test and residency certifications. There was no paperwork saying that any fiduciary duty pertained.

The superseding indictment charges mail fraud and conspiracy to commit mail fraud by Milovanovic, Lamb, and four of their customers under 18 U.S.C. §§ 1341, 1346, and 2. The district court dismissed the indictment on the ground that the mail fraud statute required a fiduciary relationship, and indicated that the jury would be instructed that the crime required economic harm to the victim. The United States appeals.

## II.  Analysis

We review de novo both a district court's dismissal of an indictment based on its interpretation of a federal statute[2] and the sufficiency of an indictment.[3]

The briefs[4] focus on an unsettled question in the Ninth Circuit: whether "honest services" fraud under the mail fraud statute can be committed only by a "fiduciary." The "honest services" portion of the mail fraud statute says that, for the purposes of the mail fraud statute, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."[5] Defendants argue that even though we have not said so, we implied in *United States v. Williams*[6] that a fiduciary relationship is a *sine qua non* of "honest services" mail fraud. We have not so held, and, in *Williams*, expressly declared that we did not have to reach the question: "we need not and do not decide

---

[2]*United States v. Marks*, 379 F.3d 1114, 1116 (9th Cir. 2004).

[3]*United States v. O'Donnell*, 608 F.3d 546, 555 (9th Cir. 2010).

[4]The parties were ordered to submit supplemental briefs addressing the effect of *Skilling v. United States*, 130 S. Ct. 2896 (2010), and *Black v. United States*, 130 S. Ct. 2963 (2010).

[5]18 U.S.C. § 1346.

[6]441 F.3d 716 (9th Cir. 2006).

whether Congress intended 'another' to reach" persons who were not fiduciaries.[7] It remains open.

The parties present arguments whether Milovanovic and Lamb were fiduciaries of the State of Washington, even though the question remains open whether this matters. The government argues that Milovanovic and Lamb were fiduciaries, and Defendants argue that they were not. Some of the arguments are of no help at all, such as pointing out that Lamb and Milovanovic were independent contractors, not government employees. It is elementary that an independent contractor may be a fiduciary, as when a testator appoints the trust department of a bank as trustee, or when a client retains a lawyer to represent him. The relevant citations are inconclusive, merely lending themselves to colorable arguments on both sides of the proposition.[8]

The inconclusiveness of the arguments and citations points to the inutility of deciding fiduciary status as a step along the way to evaluating a mail fraud indictment. Requiring "fiduciary status" merely gives a deceptive patina of limitation to a highly manipulable pigeonholing. Justice Scalia's concurrence in *Skilling* points out "the indefiniteness of the fiduciary duty," and thus its weakness as a limiting category.[9] "The Courts of Appeals may have consistently found unlawful the acceptance of a bribe or kickback by one or another sort of fiduciary, but they have not consistently described (as the statute does not) any test for who is a fiduciary."[10] Deciding

---

[7] *Id.* at 723.

[8] Appellant cites *State Police Ass'n of Mass. v. C.I.R.*, 125 F.3d 1 (1st Cir. 1997) and *Burien Motors, Inc. v. Balch*, 513 P.2d 582 (Wash. Ct. App. 1973). Appellees cite *United States v. Handakas*, 286 F.3d 92 (2d Cir. 2002) *overruled in part by United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) and *Hanson v. Blackwell Motor Co.*, 143 Wash. 547 (1927).

[9] *Skilling v. United States*, 130 S. Ct. 2896, 2937 (2010) (Scalia, J., concurring).

[10] *Id.* at 2937 n.1.

whether Milovanovic and Lamb were fiduciaries would be difficult because they were plainly used as agents to administer the state's commercial drivers' license tests, yet the contracts state that they were not agents. For purposes of this decision, we take the state contracts at their word, and assume without deciding that Milovanovic and Lamb were not agents and were not fiduciaries.

[1] The Supreme Court has not spoken on whether a fiduciary duty is a *sine qua non* of "honest services" mail fraud. Our sister circuits have given varying and conflicting answers, so no decision we make can avoid a circuit split.[11]

---

[11]*See, e.g.*, *United States v. Rybicki*, 354 F.3d 124, 155 (2d Cir. 2003) (Raggi, J., concurring) ("While a particular relationship may shed light on whether one person owes another honest services, the language of § 1346 indicates that the critical factor is the type of service at issue, not the relationship of the parties."); *United States v. Ervasti*, 201 F.3d 1029, 1037 (8th Cir. 2000) ("We reject the Ervastis' contention that § 1346 requires the breach of a fiduciary duty. . . . [T]he breach of a fiduciary duty is not a necessary element of § 1346. Certainly nothing in . . . the language of either § 1341 or § 1346 suggests the contrary."); *United States v. Sancho*, 157 F.3d 918, 920-21 (2d Cir. 1998) ("Sancho contends that criminal liability . . . for a scheme to deprive another of honest services requires the existence of a 'genuine fiduciary relationship' to the entity being defrauded . . . . There is no such requirement."), *overruled in part on other grounds by United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003). *But see, e.g.*, *United States v. McGeehan*, 584 F.3d 560, 568 (3d Cir. 2009) (noting prior Third Circuit caselaw which endorsed the limiting principle "that state law must provide the specific honest services owed by the defendant in a fiduciary relationship" (quotation omitted)), *vacated* ___ F.3d ___, 2010 WL 4196042 (3d Cir. Oct. 26, 2010); *United States v. Browne*, 505 F.3d 1229, 1265 (11th Cir. 2007) ("[T]o prove 'honest services' mail fraud, the Government must show that the accused intentionally participated in a scheme or artifice to deprive the persons or entity to which the defendant owed a fiduciary duty of the intangible right of honest services, and used the United States mails to carry out that scheme or artifice."); *United States v. Brown*, 459 F.3d 509, 519 (5th Cir. 2006) ("Honest services are services owed to an employer under state law, including fiduciary duties defined by the employer-employee relationship." (quotations omitted)); *United States v. Frost*, 125 F.3d 346, 366 (6th Cir. 1997) ("We therefore hold that private individuals, such as Frost and Turner, may commit mail fraud by breaching a fiduciary duty and thereby depriving the person or entity to which the duty is owed of the intangible right to the honest services of that individual.").

**[2]** Congress promulgated the "honest services" statute in response to the Supreme Court's decision in *McNally v. United States*.[12] *McNally* held that the scope of the mail fraud statute was limited to schemes to defraud individuals out of property or money. Congress responded by enacting 18 U.S.C. § 1346.[13] Section 1346 provided that for purposes of the mail fraud statute, 18 U.S.C. § 1341, " 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." Putting the two statutes together "whoever having devised or intending to devise a scheme or artifice to defraud" by "depriv[ing] another of the intangible right of honest services," using the mails, commits mail fraud.

**[3]** As always, we begin our analysis of the mail fraud and "honest service" statutes with the text.[14] The text of the mail fraud statute appears to rule out limiting "honest services" fraud to fiduciaries. Congress provided that "whoever" perpetrates a fraudulent scheme using the mails commits the crime of mail fraud.[15] The perpetrator category "whoever" literally means anyone, whether fiduciary or not.

---

[12]483 U.S. 350 (1987).

[13]Pub. L. No. 100-690, 102 Stat. 4181.

[14]*United States v. Monday*, 614 F.3d 983, 985 (9th Cir. 2010).

[15]18 U.S.C. § 1341. That section provides:

*Whoever*, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or

**[4]** A purposiveness analysis, considering the social harm the statute addresses, likewise suggests no limitation to fiduciaries. The purpose evident from the face of the statute is prevention and punishment of fraud. Several types of fraud expressly listed, such as selling counterfeit items, do not require a fiduciary relationship. Traditional mail frauds, such as soliciting money for items that are not what they are advertised to be, or collecting remittances by mail and not sending the goods ordered, require no fiduciary relationship.[16] Fraud generally means deception, the use of misrepresentation to obtain something of value or deprive another of something of value.[17] Plenty of traditional fraud is committed in arms-

---

receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

*Id.* (emphasis added).

[16]*See United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir.) ("Proof of an affirmative, material misrepresentation supports a conviction of mail fraud without any additional proof of a fiduciary duty."), *cert. denied*, 479 U.S. 1017 (1986).

[17]*Conard v. Nicoll*, 29 U.S. (1 Pet.) 291, 296 (1830) ("[I]t may be safely laid down, that, to constitute actual fraud between two or more persons to the prejudice of a third, contrivance and design, to injure such third person, by depriving him of some right or otherwise impairing it, must be shown."). *See also* Am. Jur. 2d *Fraud* § 1 (" 'Fraud,' . . . embraces all of the multifarious means that human ingenuity can devise and that are resorted to by one individual to gain advantage over another by false suggestions or by suppression of truth. In fact, the fertility of people's inven-

length relationships. If a merchant purports to sell a pound of coffee, but uses false weights to put only fifteen ounces in the bag, he commits fraud despite the arms-length, nonfiduciary relationship. A fiduciary relationship would give him additional duties beyond the honesty required of any seller. He would have to not only provide sixteen ounces in a pound, but also advise if the shop down the street was selling better coffee cheaper (a corporate director renting space to the corporation would have to disclose availability of better, cheaper space to the board because of his fiduciary duty[18]). "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."[19]

**[5]** Nor do the kinds of honest services fraud to which the statute is limited by *Skilling*—bribes and kickbacks—imply a fiduciary limitation. One could bribe a blogger to recommend a bistro, or kick back ten percent to a merchant who recommended a particular electrician to customers, without either of them having a fiduciary relationship. One does not have to be a fiduciary to take bribes or kickbacks.

---

tion in devising new schemes of fraud is so great that courts have always declined to define the term, reserving to themselves the liberty to deal with fraud in whatever form it may present itself." (citations omitted)); 1 J. Story, *Equity Jurisprudence* § 186, 189-90 (1870) (defining fraud as "applied to every artifice made use of by one person for the purpose of deceiving another," or as "any cunning, deception, or artifice used to circumvent cheat, or deceive another.").

[18]*See, e.g.*, *Puritan Med. Ctr., Inc. v. Cashman*, 413 Mass. 167 (1992). The great securities regulation scholar, Louis Loss, used to joke that a partner who took a CLE on fiduciary duties realized that when a customer who meant to give him $20 accidentally gave him two $20 bills stuck together, he could no longer just pocket the extra $20, but had a duty to disclose the extra $20 to his partner.

[19]*Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.).

The cases suggest a legitimate and important purpose in trying to find some sort of limitation on federal mail fraud, so that prosecutors cannot convict whoever may be on the wrong end of political shotguns. Some of the policy concerns are arguable and unsupported by the text. For example, some of the cases suggest that it is no business of the federal government that some state or local governments are corrupt.[20] Maybe so. Or maybe it is the federal government's business, because corruption may not be curable within the very governments that are corrupt.[21] Still, once fraud is broadened to deprivation of services, almost anyone can be charged with not doing all that they ought to have done in performing their jobs, and if broadened that far, the notion of bribes may broaden commensurately so that limitations on prosecutors run amuck become illusory.[22] Is "sneak out to the ball game with me, I already have an extra ticket you can use" a bribe by the offeror and a deprivation of honest services by the employee who accepts?

---

[20]*United States v. Rybicki*, 354 F.3d 124, 164-65 (2d Cir. 2003) (Jacobs, J., dissenting) ("[T]he majority opinion invites federal prosecutors to police honesty in the corridors of state government by invoking section 1346 against state employees for their acts of 'honest services' fraud. This construction of section 1346 undoubtedly 'leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials.' " (quotation omitted)).

[21]*See generally* Norman Abrams & Sara Sun Beale, *Federal Criminal Law and its Enforcement* 151 (2d ed. 1993) ("It has been suggested that the federal government has an obligation under the Republican government clause of the constitution to ensure that states are free of public corruption, Adam H. Kurland, *The Guarantee Clause as a Basis for Federal Prosecutions of State and Local Officials*, 62 S. Cal. L. Rev. 369 (1989), and that authority was cited in the Congressional debates that led to the enactment of Section 1346. 134 Cong. Rec. H11251 (daily ed. Oct. 21, 1988) (comments of Rep. Conyers introducing legislation to overrule *McNally*).").

[22]The mail fraud statute has been described by one well-known former federal prosecutor as "our Stradivarius, our Colt 45, our Louisville Slugger, our Cuisinart—and our true love." Jed S. Rakoff, *The Federal Mail Fraud Statute (Part I)*, 18 Duquesne L. Rev. 771, 771 (1980).

Judge Raggi's concurrence in the Second Circuit en banc decision *United States v. Rybicki*[23] suggests a sound textual basis for giving some content to the statute so that it distinguishes between corruption and mere nonfeasance. Her limitation makes textual sense, and is not merely picked out of the air, or based on some policy not set out or implied by the statute. We analyze the statute as she does.

**[6]** The key is, as it should be, reading the words of Section 1346. This post-*McNally* restoration of "honest services" fraud says "scheme or artifice to deprive another of the intangible right of honest services." Both "whoever" and "honest" matter. This language does not limit "whoever" in Section 1341 to fiduciaries or any other subset of "whoever." "While a particular relationship may shed light on whether one person owes another honest services, the language of § 1346 indicates that the critical factor is the type of service at issue, not the relationship of the parties."[24]

The words of Section 1346 taken together with Section 1341 imply five limitations. First, there must be a legally enforceable right to have another provide honest services,[25] because without that right, there could be no deprivation of the right. Second, not any deprivation of services provides a predicate for fraud, only deprivation of services the value of which depends on their being performed honestly.[26] The statute says "honest services," not just "services," and every word should be accorded meaning.[27] Dishonest deprivation of services differ from deprivation of honesty in providing services. The statute criminalizes the latter, not the former. Suppose an employee in charge of purchasing office supplies, bribed by

---

[23]354 F.3d 124 (2d Cir. 2003).

[24]*United States v. Rybicki*, 354 F.3d 124, 155 (2d Cir. 2003) (Raggi, J., concurring).

[25]*Id.* at 153.

[26]*Id.*

[27]2A *Sutherland Statutory Construction* § 46:6 (7th ed. 2010).

a free ticket, sneaks off to the ball game leaving his suit jacket on the chair and having his coworker tell his boss if she inquires that he is in the men's room. He has dishonestly deprived his employer of services in exchange for a bribe, but has not deprived his employer of honesty in the performance of his tasks, as he would if in return for the ticket he steered the employer's business to the provider of the ticket instead of a cheaper, better supplier.

Third, the defendant must intend to defraud, because Section 1341 says "having devised or intending to devise any scheme or artifice to defraud." That the victim may not get all the services it should is insufficient if the specific intent to defraud is absent.[28] Fourth, the scheme must use fraud, that is misrepresentation or concealment of a material fact. And fifth, the mails must be used to further the scheme.

**[7]** The statute does not say that the fraud must be intended to deprive the victim of money or property. At common law, in the civil context, fraud requires damages, ordinarily a monetary loss, but criminal fraud has always been broader in its reach.[29] Ordinarily, fraud against private victims will have that intent, but fraud against the government often will not. For example, in this case, a commercial drivers' license, though it has considerable economic value to the holder, has no monetary value to the government beyond the fee the government

---

[28]*See United States v. Kincaid-Chauncey*, 556 F.3d 923, 941 (9th Cir. 2009) ("The specific intent requirement for honest services fraud survives *McNally* by virtue of § 1346 and is necessary to distinguish legal conduct from honest services fraud." (citation omitted)).

[29]*See* Ellen S. Podgor, *Criminal Fraud*, 48 Am. U. L. Rev. 729, 730 n.5 (1999) (discussing fraud in the civil context); *id.* at 736-47 (discussing the scope and development of criminal fraud); *see also* Mark Zingale, *Note*, *Fashioning a Victim Standard in Mail and Wire Fraud: Ordinarily Prudent Person or Monumentally Credulous Gull*, 99 Colum. L. Rev. 795, 817-18 (1999) (discussing often confused differences between civil and criminal fraud); Steven Fasman, *Note*, *Proper Application of Civil RICO to Patent Fraud*, 96 Yale L. J. 1323, 1327 (1987) (discussing civil fraud).

receives when it issues the license, a fee that was paid in this case. What the government seeks, by honest enforcement of the testing requirements, is not money, but safety. The government uses the commercial drivers' license exams to protect its citizens from having to drive their little compact cars alongside big rigs driven by people who have not demonstrated their ability to drive safely. It would make no sense, in terms of the purpose of the fraud statutes or the commercial drivers' license statutes and regulations, to treat as fraud only those schemes that deprived the government of its license issuance fees, yet not of the purpose of the testing, assuring that the drivers honestly passed the tests. All sorts of government services that have to be performed honestly do not involve the financial interest of government—for example, a bribe to a policeman to let a criminal go.[30] The gravamen of the harm prohibited by the statute is dishonesty in providing services where the victim, the government in this case, was entitled to have the services performed honestly.

### III.   Conclusion

[8] Honest services mail fraud does not require proof of a fiduciary relationship. Nor does it require damages to the money or property of the victim. It is, however, subject to the limitations set out above. The district court thus erred in dismissing the indictment.

REVERSED and REMANDED.

---

[30]*See, e.g.*, *United States v. Boots*, 80 F.3d 580 (1st Cir. 1996) (upholding honest services wire fraud conviction for scheme to bribe a police chief to defraud citizens of his honest services), *overruled in part by Pasquantino v. United States*, 544 U.S. 349, 354 (2005).

FERNANDEZ, Circuit Judge, dissenting:

Like the majority, I must start with the mail fraud statute itself, which imposes criminal penalties upon those who use the mails in the execution of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341.

Before the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987), we held that § 1341 proscribed schemes to defraud another not only of money and property, but also of "intangible rights," including the right to loyal or honest services. *See United States v. Bohonus*, 628 F.2d 1167, 1171-72 (9th Cir. 1980); *see also United States v. Williams*, 441 F.3d 716, 723-24 (9th Cir. 2006). In *McNally*, 483 U.S. at 360, 107 S. Ct. at 2881-82, the Court held that the mail fraud statute did not extend to honest services fraud. The following year, Congress enacted 18 U.S.C. § 1346, which specifies that for purposes of the mail fraud statute, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." In so doing, "Congress restored the pre-*McNally* landscape." *Williams*, 441 F.3d at 722; *accord*, *United States v. Sorich*, 523 F.3d 702, 707 (7th Cir. 2008), *cert. denied*, ___ U.S. ___, ___, 129 S. Ct. 1308, 1308, 173 L. Ed. 2d 645 (2009); *United States v. Rybicki*, 354 F.3d 124, 136-37 (2d Cir. 2003) (en banc). Thus, the fact that a case preceded, rather than succeeded, *McNally* will not affect my analysis.

The district court's dismissal of the Indictment was based upon its determination that for honest services fraud the Indictment had to plead and the government must prove that at least one of the Defendants had a fiduciary duty to the Washington State Department of Licensing ("DOL"). As the majority points out, § 1346 does not expressly contain that restriction, and I recognize that, in general, where a statute is

sufficiently clear we look no farther than its own language. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947, 147 L. Ed. 2d 1 (2000); *Burton v. Stevedoring Servs. of Am.*, 196 F.3d 1070, 1072 (9th Cir. 1999); *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994). Here, however, honest services is not an unambiguous phrase, and when attempting to give content to that concept, the courts have always been concerned lest the net cast by the mail fraud statute encompass far too much activity.[1] In my view, when Congress acted, it necessarily adopted the limitations the courts had created when they used the phrase.[2] As we have said, "[w]ithout some kind of limiting principle, honest services wire fraud could potentially make relatively innocuous conduct subject to criminal sanctions." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 940 (9th Cir. 2009); *see also United States v. Handakas*, 286 F.3d 92, 107 (2d Cir. 2002) (expressing need to avoid making a § 1346 case out of all breaches of contract or false tax returns), *overruled on other grounds by Rybicki*, 354 F.3d at 144; *Sorich*, 523 F.3d at 707 (stating that courts have "felt the need to find limiting principles"); *United States v. Cochran*, 109 F.3d 660, 667 (10th Cir. 1997) (stating not every breach of contract or misstatement is enough);

---

[1] Over 125 years ago the Supreme Court noted that "[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *United States v. Reese*, 92 U.S. 214, 221, 23 L. Ed. 563 (1876); *see also United States v. Rrapi*, 175 F.3d 742, 755-56 (9th Cir. 1999) (Thomas, J., concurring and dissenting) ("A creative interpretation . . . would not afford sufficient notice of the criminal activity to survive constitutional muster.").

[2] Of course, it is presumed that "legislatures act with case law in mind." *Abuelhawa v. United States*, ___ U.S. ___, ___, 129 S. Ct. 2102, 2106, 173 L. Ed. 2d 982 (2009) ; *Williams v. Taylor*, 529 U.S. 362, 379-80 & n.12, 120 S. Ct. 1495, 1506 & n.12, 146 L. Ed. 2d 389 (2000); *cf. NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S. Ct. 2789, 2794, 69 L. Ed. 2d 672 (1981) (in general, courts "must infer" that when "Congress uses terms that have accumulated settled meaning under . . . common law" it "means to incorporate [that] established meaning").

*United States v. Sawyer*, 85 F.3d 713, 728 (1st Cir. 1996) (stating that not "every transgression of state governmental obligations" is enough).

As it is, courts have applied the honest services concept to the paradigm case of bribing of or other dishonest wrongdoing by high public officials. *See United States v. Urciuoli*, 513 F.3d 290, 294 (1st Cir. 2008); *Bohonus*, 628 F.2d at 1171. They have also applied it to employees in general because employees can be said to owe their employers loyal and honest services. *See Rybicki*, 354 F.3d at 141-42; *Bohonus*, 628 F.2d at 1172; *see also United States v. Alkins*, 925 F.2d 541, 545-48 (2d Cir. 1991) (fraud against state by its own employees). In fact, employees do owe a kind of fiduciary duty to their employers. *See United States v. Frost*, 125 F.3d 346, 366-67 (6th Cir. 1997); *see also Sorich*, 523 F.3d at 707. Moreover, those who stand in an apparent agency relationship with another can be said to owe a duty of loyalty to their principal, and, thus, be subject to the mail fraud statute. *See United States v. Ervasti*, 201 F.3d 1029, 1036 (8th Cir. 2000).

The above cases fall into a pattern requiring a fiduciary duty before an honest services mail fraud case can go forward. Some cases have reached further. For example, in one case a consultant who was retained to perform a due diligence investigation regarding a four hundred million dollar letter of credit was said to owe an intangible duty of honest services sufficient to come within the reach of the statute without regard to whether he was a true fiduciary. *See United States v. Sancho*, 157 F.3d 918, 920-22 (2d Cir. 1998) (per curiam), *overruled on other grounds by Rybicki*, 354 F.3d at 144. Nevertheless, in an en banc case from the same Circuit, the court stated that even if most of the cases involved employees, it saw "no reason the principle they establish would not apply to other persons who assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity." *Rybicki*, 354 F.3d at 142 n.17. That duty, of course, is a fiduciary duty, or at least something very like one.

This court has been rather circumspect about the possible full reach of § 1346. As we said in *Williams*, 441 F.3d at 723:

> At a minimum, we and other circuits have recognized the viability of the "intangible rights" theory when the private defendant stands in a fiduciary or trust relationship with the victim of the fraud. Because Defendant had such a relationship with his victim, we need not and do not decide whether Congress intended "another" to reach even further.

I, too, would eschew saying more than is needed for the decision of this case. Still and all, we are called upon to alembicate what has gone before, without suggesting that no new considerations could arise in the future. When I do that, I am satisfied that in order to spell out an honest services fraud case the indictment must plead sufficient facts to give notice that a defendant has a heightened duty (for example, as an official, or employee, or agent, or trustee, or fiduciary) rather than a mere contractual duty toward the alleged victim, and has violated (or attempted to violate) that heightened duty by use of a fraudulent scheme of some sort.[3] I hasten to add that the mere fact that a contract contains performance or other specifications does not itself give rise to a heightened duty. When all of these principles are applied to this case, I am satisfied that the Indictment at hand is insufficient.

First, as pled, it is apparent that the applicants themselves had no honest services duty to DOL, and unless either Lamb or Milovanovic did, the Indictment must fall as to the applicants.

---

[3]As the Supreme Court recently pointed out, before the enactment of § 1346, "[t]he 'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Skilling v. United States*, ___ U.S. ___, ___, 130 S. Ct. 2896, 2930, 177 L. Ed. 2d 619 (2010).

Second, as pled, Milovanovic had no honest services duty to DOL. No contractual duty whatsoever is even spelled out. The Indictment does allege that he is bilingual and that an applicant "was entitled to have an interpreter of his or her choosing" to translate for him during the written driver's license examination. It then goes on to describe Milovanovic's central part in the scheme and alleged wrongdoing. No more. Thus, again, unless Lamb had a duty of honest services, the Indictment must fall as to Milovanovic also.

The Indictment comes closest in its allegations about Lamb, but not close enough. It points out that Lamb is certified to give driving skills tests, but he is not a DOL employee. He does have a contract with DOL pursuant to which he gives the tests and reports the results. However, it is not alleged that he is an agent of DOL, nor is it even alleged that he is paid by DOL for his performance pursuant to the contract. Again, the scheme and his activities are spelled out. Again, I fail to see any allegations that subtend a heightened duty toward DOL applicable to Lamb.

Thus, while I am aware of the fact that an indictment need only spell out the elements of the alleged offense and give notice, this Indictment falls short of meeting even those minimum requirements. As a result, the Indictment must, as the district court indicated, fall.[4]

---

[4]The separate evidence submitted by the government does not help it. But for waiver of the issue, I would not even refer to it. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16, 72 S. Ct. 329, 332 n.16, 96 L. Ed. 367 (1952); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002); *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982). In any event, that evidence makes it even more clear that Lamb and Milovanovic are independent contractors — Lamb with DOL, Milovanovic with a third party. For example, the contract with Lamb says "The parties intend that an Independent Contractor relationship will be created by this Contract. The Contractor performing under this Contract is not an employee or agent of DOL."

I hold no brief for the facinorous behavior alleged against Milovanovic and Lamb. However, I am also unable to say that the Indictment sufficiently pleads the crime of honest services mail fraud. 18 U.S.C. §§ 1341, 1346. That is because it fails to allege the kind of heightened duty to DOL that would suffice to raise Milovanovic and Lamb from the status of miscreants to the status of federal defendants.

Thus, I respectfully dissent.