**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellant,*

v.

BRANO MILOVANOVIC; TONY GENE
LAMB; ISMAIL HOT; MUHAMED
KOVACIC; ELVEDIN BILANOVIC;
ALEKSANDAR DJORDJEVIC,
     *Defendants-Appellees.*

No. 08-30381

D.C. No.
2:08-cr-00010-
EFS-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted En Banc
December 12, 2011—San Francisco, California

Filed April 24, 2012
Amended May 22, 2012

Before: Alex Kozinski, Chief Judge, Susan P. Graber,
Kim McLane Wardlaw, Ronald M. Gould, Richard A. Paez,
Richard C. Tallman, Johnnie B. Rawlinson,
Richard R. Clifton, Carlos T. Bea, Milan D. Smith, Jr., and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Tallman;
Concurrence by Judge Clifton

## COUNSEL

James A. McDevitt, United States Attorney, Joseph H. Harrington, Assistant United States Attorney, Timothy M.

Durkin, Assistant United States Attorney, United States Attorney's Office, Spokane, Washington, for the plaintiff-appellant.

Robert Fischer, Spokane, Washington, for defendant-appellee Brano Milovanovic.

Joseph Nappi, Jr., Spokane, Washington, for defendant-appellee Tony Gene Lamb.

Frank L. Cikutovich, Spokane, Washington, for defendant-appellee Ismail Hot.

Curran C. Dempsey, Spokane, Washington, for defendant-appellee Elvedin Bilanovic.

Dan B. Johnson, Spokane, Washington, for defendant-appellee Muhamed Kovacic.

Gerald R. Smith, Spokane, Washington, for defendant-appellee Aleksandar Djordjevic.

## ORDER

The Government's Motion to Amend the Published Opinion is GRANTED. The opinion filed on April 24, 2012, is AMENDED as follows: (1) the phrase "on which the victim relied to its detriment" is omitted from slip op. 4371; and (2) the phrase "on which the agency relied in issuing CDLs" is omitted from slip op. 4374.

An amended opinion will be filed concurrently with this order

**OPINION**

TALLMAN, Circuit Judge:

The State of Washington outsources the testing of applicants for commercial truck drivers' licenses to entities and individuals who administer the test and certify the results. The government alleges that a scheme to solicit bribes corrupted the process and caused the State to issue licenses to unqualified non-residents. A federal grand jury returned an indictment for mail and wire fraud on a theory that the State was deprived of the delivery of honest services by those involved. The district court held that the existence of a formal fiduciary duty to the State and resulting economic harm were required, and the court dismissed all charges. The United States brought an appeal to reinstate the case. 18 U.S.C. § 3731.

We address: (1) whether breach of a fiduciary duty is an element of honest services mail fraud under 18 U.S.C. §§ 1341 and 1346; (2) whether the superseding indictment, charging the defendants with a bribery-based scheme to defraud that breached a material relationship of trust, states an offense for honest services fraud in violation of 18 U.S.C. §§ 2, 1341, 1346, and 1349; and (3) whether, as the district court ruled, economic harm is required to establish a cognizable offense. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

I

Defendants Brano Milovanovic ("Milovanovic"), Tony Lamb ("Lamb"), Ismail Hot ("Hot"), Muhamed Kovacic ("Kovacic"), Elvedin Bilanovic ("Bilanovic"), and Aleksandar Djordjevic ("Djordjevic") were charged with conspiracy and with devising a scheme and artifice to defraud and deceive the Washington State Department of Licensing ("DOL"). The government alleged that defendants solicited and were paid bribes to help unqualified, non-resident appli-

cants obtain commercial drivers' licenses ("CDLs") through materially false and fraudulent misrepresentations and omissions on CDL applications achieved by cheating on the exams, by false certifications that skills tests were completed successfully when no such tests were successfully performed, and by use of in-state addresses in Spokane, Washington, when the applicants actually resided out of state.

Because the district court dismissed the superseding indictment on these allegations, we assume for purposes of our decision that the United States can prove what it has alleged. *See, e.g., United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981) ("'[A]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on its merits.' " (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956))). We address the legal challenges surrounding the sufficiency of the indictment to state proper crimes to determine whether, if proved beyond a reasonable doubt, a properly instructed jury could convict. *See, e.g., United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("'Of course, none of these charges have been established by evidence, but at this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense.' " (quoting *United States v. Sampson*, 371 U.S. 75, 78-79 (1962))). For that reason, we recite the facts as the Grand Jury has alleged them and draw all reasonable inferences in favor of the government.

A

Like most states, the State of Washington requires commercial truck drivers to obtain a special license to operate large vehicles, such as eighteen-wheel trucks and trailers, on public roadways. An applicant who desires to obtain a CDL in Washington must: (1) be a resident of the State; and (2) have a Washington personal driver's license. If an applicant meets both initial requirements, the applicant is eligible to take the

CDL exam, which consists of both a written and a driving test. Wash. Rev. Code § 46.25.060(1)(a). The written test, commonly referred to as the "Knowledge Test," assesses an applicant's knowledge of the rules and regulations relating to the operation of commercial vehicles. An applicant who is not proficient in the English language is entitled to have an interpreter present to translate the exam questions and the applicant's answers.

Once an applicant successfully passes the Knowledge Test, he or she is eligible to take the driving portion. The driving exam is conducted on behalf of the State by a third-party examiner,[1] is approximately an hour and a half to two hours in length, and is composed of three sections: (1) a pre-trip inspection; (2) a road test; and (3) a basic controls test.

If an eligible applicant successfully completes both portions of the CDL exam, the third-party examiner and the applicant sign a document, the "Skills Test Results," to verify that the applicant passed the exam. The applicant then presents the form to the local DOL office, pays the requisite fees, and is issued a temporary CDL. The local DOL office subsequently sends the applicant's paperwork via the U.S. Mails to the DOL in Olympia, Washington, which saves a copy of the

---

[1]Third-party testers contract with the DOL to administer the CDL test in the same manner as the State would administer the exam. *See* 49 C.F.R. § 383.75(a)(1) ("The skills tests given by the third party are the same as those that would otherwise be given by the State using the same version of the skills tests, the same written instructions for test applicants, and the same scoring sheets . . . ."); *see also* Wash. Rev. Code § 46.25.060(1)(b)(i) ("The department may authorize a person, including an agency of this or another state, an employer, a private driver training facility, or other private institution, or a department, agency, or instrumentality of local government, to administer the skills test specified by this section under the following conditions: [t]he test is the same which would otherwise be administered by the state."). Third-party testers are also required to maintain records of the tests they administer and to either mail or fax their completed test logs monthly to the DOL headquarters in Olympia, Washington.

form electronically and uploads the documents to a database. The information is then supplied to the Central Issuance System, which is managed for the State by a private corporation that prints the permanent CDL and sends it via the U.S. Mails to the applicant's address.

B

Milovanovic, a bilingual English and Bosnian speaker, was an independent contractor for Spokane International Translation, which itself contracted to provide translation services to government agencies, including the DOL in the Spokane area.[2] As part of the scheme and artifice to defraud, Milovanovic contacted Bosnian-speaking individuals residing outside the State of Washington and offered to provide them a CDL for approximately $2,500. If an applicant paid the requested amount, he or she traveled to Spokane, Washington, where Milovanovic would serve as "translator" during the written exam. Milovanovic, however, did more than translate; he routinely assisted applicants to cheat on the exam by either orally telling them the correct answers in their native tongue or using hand signals during the exam to identify the correct answers. Milovanovic also provided local addresses to applicants to help them satisfy the Washington residency requirement. Once an applicant "passed" the written exam, Milovanovic contacted Lamb, a CDL third-party tester for the DOL. Unlike Milovanovic, Lamb contracted directly with the

---

[2]The contract between Milovanovic and Spokane International Translation specifically states that the parties "acknowledge that [Milovanovic] is an independent professional and intend that [Milovanovic's] relationship with Spokane International Translation . . . is that of an Independent Contractor, as opposed to an employee-employer relationship." The agreement further states that Milovanovic "will perform th[e] agreement as an Independent Contractor and nothing . . . shall be construed to be inconsistent with th[e] relationship or status." Consequently, we assume, without deciding for the purpose of analyzing the issue before us, that Milovanovic is an independent contractor, and not an employee of the Washington DOL.

State agency. Like Milovanovic, however, Lamb was also an independent contractor, not an employee of the DOL.[3] In exchange for falsifying the results of the skills test for each applicant, Milovanovic paid Lamb approximately $200 to $500 per test. To make his records appear legitimate to state auditors, Lamb sometimes noted in his CDL Tester Logs— which he either mailed or faxed to the DOL in Olympia in order to comply with DOL rules—that applicants failed the first time they took the skills test.

Co-defendants Hot, Kovacic, Bilanovic, and Djordjevic allegedly paid $2,500 to the primary conspirators and received the fraudulent CDLs to which they were not entitled as part of the scheme to defraud the State of Washington.

II

The scheme was eventually discovered, and a Spokane federal grand jury returned an indictment in the United States District Court for the Eastern District of Washington charging the six defendants. The defendants jointly filed a motion to dismiss the five-count mail fraud superseding indictment, arguing (1) the superseding indictment failed to allege that the defendants deprived the DOL of "money or property" as required under 18 U.S.C. § 1341;[4] (2) the superseding indict-

---

[3]The agreement between Lamb and the DOL states:

   The parties intend that an independent Contractor relationship will be created by this Contract. The Contractor performing under this Contract is not an employee or agent of DOL. The Contractor will not hold itself out as, nor claim to be, an officer or employee of DOL or of the state of Washington by reason of this Contract, nor will the Contractor make any claim of right, privilege or benefit which would accrue to such employee under law. Conduct and control of the work will be solely with the Contractor.

As a result, we also assume, without deciding, for the purpose of analyzing the issue before us, that Lamb is an independent contractor.

[4]Title 18 U.S.C. § 1341 states in relevant part:

ment failed to adequately allege the "honest services" require-ment of 18 U.S.C. § 1346;[5] and (3) that the defendants' alleged fraud was completed before any use of the U.S. Mails occurred. The district court ruled in favor of the defendants and dismissed the superseding indictment, holding that there could be no deprivation of the right to honest services as required by §§ 1341 and 1346 because, as independent con-tractors, neither Milovanovic nor Lamb had an agency or employment relationship with the State of Washington DOL. As to the remaining defendants—Hot, Kovacic, Bilanovic, and Djordjevic—the aiding and abetting charges were dis-missed because, as a result of the court's dismissal of the charges against Milovanovic and Lamb, there was no princi-pal whom they could aid or abet. The district court further ruled that had the case proceeded to trial, it would have instructed the jury that identifiable economic harm is also

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or autho-rized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or deliv-ered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both . . . .

[5]"[T]he term 'scheme or artifice to defraud' includes a scheme or arti-fice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

required to convict a defendant under §§ 1341 and 1346. The government promptly appealed. 18 U.S.C. § 3731. A divided panel of our Court reversed and remanded. *United States v. Milovanovic*, 627 F.3d 405 (9th Cir. 2010). We voted to rehear the case en banc.

## III

We review de novo the sufficiency of an indictment. *United States v. King*, 660 F.3d 1071, 1076 (9th Cir. 2011), *petition for cert. filed*, 80 BNA U.S.L.W. 3481 (U.S. Feb. 2, 2012) (Nos. 11-959, 11A575). We also review de novo a district court's decision to dismiss an indictment based on an interpretation of a federal statute, *United States v. Marks*, 379 F.3d 1114, 1116 (9th Cir. 2004), and "presume the allegations of an indictment to be true for purposes of reviewing a district court's ruling on a motion to dismiss," *United States v. Fiander*, 547 F.3d 1036, 1042 n.3 (9th Cir. 2008) (citation and internal quotation marks omitted).

## IV

We discuss the history of the Mail Fraud Statute only briefly.[6] We then turn to the issues presently before us: (1) whether breach of fiduciary duty is an element of honest services fraud under 18 U.S.C. §§ 1341 and 1346; and (2) whether the indictment charging the defendants with a bribery-based scheme to defraud states an offense for honest services fraud. We also provide guidance to the district court on remand with regard to the economic harm issue.

---

[6]For a full history of the Mail Fraud Statute, 18 U.S.C. § 1341, see *Skilling v. United States*, 130 S. Ct. 2896, 2926-27 (2010); *McNally v. United States*, 483 U.S. 350, 356-60 (1987) (superseded by statute, 18 U.S.C. § 1346); *United States v. Rybicki*, 354 F.3d 124, 132-45 (2d Cir. 2003) (en banc).

A

The Mail Fraud Statute, 18 U.S.C. § 1341, was first enacted in 1872 with the purpose of prohibiting use of the mails in furtherance of "any scheme or artifice to defraud." *McNally*, 483 U.S. at 356. It was originally intended to protect individuals from schemes to deprive them of their property or money. *Id.* In 1909, Congress amended the statute by adding the words "or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" after the original phrase "any scheme or artifice to defraud." *Id.* at 357 (quoting Act of Mar. 4, 1909, ch. 321, § 215, 35 Stat. 1130). After the amendment passed, an honest services component to the statute developed through jurisprudence, which prohibited schemes "designed to deprive individuals, the people, or the government of intangible rights, such as the right to have public officials perform their duties honestly." *Id.* at 358 (citations omitted).

In 1987, however, the Supreme Court in *McNally* looked to congressional intent in interpreting § 1341 and held that the Mail Fraud Statute was "limited in scope to the protection of property rights." *Id.* at 360. In so holding, the Supreme Court eliminated the judicially-recognized honest services component from § 1341, stating that Congress should clarify the breadth and scope of the statute if it desired a further reach. *See id.* ("If Congress desires to go further, it must speak more clearly than it has.").

Congress did so by quickly enacting a new statute, 18 U.S.C. § 1346, thereby restoring the intangible right to honest services that lower courts had recognized before *McNally* and broadening the scope of the term "scheme or artifice to defraud" to include " 'a scheme or artifice to deprive *another* of the intangible right of honest services.' " *Skilling*, 130 S. Ct. at 2927 (emphasis added) (quoting 18 U.S.C. § 1346).

Despite Congress's attempt to clarify the scope of the Mail Fraud Statute, uncertainty remained, particularly as to

whether the statute was unconstitutionally vague. *See, e.g., Rybicki*, 354 F.3d at 144 (holding that 18 U.S.C. § 1346 is not unconstitutionally vague on its face); *United States v. Frost*, 125 F.3d 346, 370-72 (6th Cir. 1997) (same). The Supreme Court, however, recently resolved these constitutional concerns in *Skilling*, 130 S. Ct. at 2927-34. Jeffrey Skilling, an Enron Corporation officer, was indicted, along with other Enron officers, for allegedly engaging in a scheme to deceive investors about Enron's financial status by manipulating Enron's financial data and making false and misleading statements to investors and the Securities and Exchange Commission. *Id.* at 2907-08. Skilling was charged, *inter alia*, with conspiracy to commit honest-services wire fraud, in violation of 18 U.S.C. §§ 371, 1343, and 1346, by depriving Enron and its shareholders of the intangible rights of his honest services. *Id.*

**[1]** In analyzing the statute, the Supreme Court declined to invalidate § 1346. *Id.* at 2928. Rather, the Court held that "§ 1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* case law," *id.* at 2931, and ruled that Skilling's conduct did not fall within § 1346's proscription "[b]ecause [his] alleged misconduct entailed no bribe or kickback," *id.* at 2907. In so holding, the Supreme Court stated that "[t]he 'vast majority' of the honest-services cases involved offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes." *Id.* at 2930 (emphasis added) (citation omitted). We now consider whether the Supreme Court intended to require a breach of fiduciary duty as an element of honest services fraud under 18 U.S.C. §§ 1341 and 1346, and, if so, whether the breach of a trust relationship, not arising to a formal fiduciary duty, will suffice. We believe that breach of fiduciary duty is required for honest services fraud, that it does not require a formal fiduciary duty, and that a trust relationship, as existed here, is sufficient.

## B

In light of the Supreme Court's decision in *Skilling*, the parties agree that a breach of fiduciary duty is a required ele-

ment of honest services fraud under §§ 1341 and 1346. Where they disagree, however, is whether the Supreme Court intended to require a formal, or classic, fiduciary duty or whether the statute also reaches those who assume a comparable duty of loyalty, trust, or confidence. Defendants argue that because Lamb was an independent contractor and Milovanovic did not contract with the State directly, there was no recognized fiduciary relationship between them and the State of Washington. Although we agree that a breach of fiduciary duty is an element of honest services mail fraud, our agreement with the defendants' argument stops there.

We addressed the nature of the fiduciary relationship required to render an individual susceptible to prosecution under §§ 1341 and 1343 in *United States v. Williams*, where we held that the " 'intangible rights' theory of fraud, as codified by § 1346, can apply to private individuals as well as to public figures." 441 F.3d 716, 723 (9th Cir. 2006). However, because the defendant in *Williams* was a formal fiduciary and, therefore, bound in law to the highest duty of loyalty and honesty such as that owed by financial trustees or guardians, it was unnecessary for us to decide whether the intangible right to honest services in § 1346 applies to persons who are not formal fiduciaries. *Id.* at 724. "At a minimum," we held, "we and other circuits have recognized the viability of the 'intangible rights' theory when the private defendant stands in a fiduciary or trust relationship with the victim of the fraud." *Id.* at 723. Today we consider "whether Congress intended 'another' [in § 1346] to reach even further." *Id.*

After *Williams*, the Supreme Court issued its decision in *Skilling*, where, in an attempt to salvage the honest services doctrine, the Court limited its scope to pre-*McNally* applications*, which it found at its core to contain "[t]he 'vast majority' of the honest-services cases involv[ing] offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes." *Skilling*, 130 S. Ct. at 2930 (emphasis added) (citation omitted). The parties point to this passage to argue

that a breach of fiduciary duty is an element of honest services fraud.

**[2]** A close examination of the Supreme Court's opinion in *Skilling* reveals that embedded in the Court's holding—"that § 1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* case law"—is the implication that a breach of a fiduciary duty is an element of honest services fraud. *Id.* at 2931. Justice Scalia's characterization of the holding in *Skilling*, which he framed as " 'the intangible right of honest services' means the right not to have *one's fiduciaries* accept 'bribes or kickbacks,' " *id.* at 2935 (Scalia, J., concurring) (emphasis added), is premised on the Court's holding that a breach of fiduciary duty is a requisite element of honest services fraud. This interpretation is further evidenced by the manner in which the majority responded to Justice Scalia's concurrence. By observing that "[t]he existence of a fiduciary relationship, under any definition of that term, was usually beyond dispute [in bribe and kickback cases]," the majority similarly declared that a breach of fiduciary duty is required.[7] *Id.* at 2931 n.41. Consequently, we hold that a breach of a fiduciary duty is an element of honest services fraud under 18 U.S.C. §§ 1341 and 1346.

---

[7]Specifically, the Supreme Court stated:

Justice Scalia emphasizes divisions in the Courts of Appeals regarding the source and scope of fiduciary duties. But these debates were rare in bribe and kickback cases. The existence of a fiduciary relationship, under any definition of that term, was usually beyond dispute; examples include public official-public, *see, e.g., United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979); employee-employer, *see, e.g., United States v. Bohonus*, 628 F.2d 1167 (9th Cir. 1980); and union official-union members, *see, e.g., United States v. Price*, 788 F.2d 234 (4th Cir. 1986). *See generally Chiarella v. United States*, 445 U.S. 222, 233 (1980) (noting the "established doctrine that [a fiduciary] duty arises from a specific relationship between two parties").

*Skilling*, 130 S. Ct. at 2931 n.41 (alteration in original) (internal citations omitted).

**[3]** But our holding does not exempt Milovanovic and Lamb from prosecution under the Mail Fraud Statute simply because they are independent contractors. A fiduciary is generally defined as "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor . . . ." Black's Law Dictionary (9th ed.). And courts have held that "fiduciary" encompasses informal fiduciaries. *See, e.g., In re Monnig's Dep't Stores, Inc. v. Azad Oriental Rugs, Inc.*, 929 F.2d 197, 201 (5th Cir. 1991) ("Confidential relationships arise not only from technical fiduciary relationships, but also from partnerships, joint ventures, and other informal relationships."); *United States v. Pappert*, 112 F.3d 1073, 1080 (10th Cir. 1997) ("[T]here is not a bright line between formal or informal fiduciary relationships, and run-of-the-mill commercial relationships . . . . [Courts] must carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity, and relationships in which the victim's trust is based on defendant's position in the transaction.") (internal quotation marks omitted); *Advocare Int'l, LP v. Horizon Labs., Inc.*, 524 F.3d 679, 695-98 (5th Cir. 2008) (discussing formal and informal fiduciaries under Texas law). This definition is broad, but intentionally so.[8] The existence of a fiduciary duty

---

[8]The Tenth Circuit summarized the challenges that courts face in providing an exact definition of a "fiduciary":

> A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence . . . . The courts have consistently refused to give an exact definition to, or to fix definite boundaries of, that class of human relations which, by principles of common honesty, require fair dealing between the parties, and which is commonly known as fiduciary relations.

*Ensminger v. Terminix Int'l Co.*, 102 F.3d 1571, 1574 (10th Cir. 1996) (alteration in original) (citation and internal quotation marks omitted) (applying Kansas law).

in a criminal prosecution is a fact-based determination that must ultimately be determined by a jury properly instructed on this issue.[9]

[4] In *Skilling*, 130 S. Ct. at 2931 n.41, the Supreme Court's reliance on *Chiarella v. United States*, a securities case that found "the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary *or other similar relation of trust and confidence* between them," suggests that the Supreme Court interpreted the Mail Fraud Statute to mean that both formal— "fiduciary"— and informal fiduciaries—"other similar relation of trust and confidence"—are susceptible to prosecution. 445 U.S. 222, 228 (1980) (first alteration in original) (emphasis added) (citation and internal quotation marks omitted); *see also Rybicki*, 354 F.3d at 126-27 ("Based upon a review of the

_____

[9]Our circuit currently has no pattern instruction regarding the elements of a fiduciary duty, but the Eleventh Circuit has created one that would be good for use as a starting point for this and many other cases. *See* Eleventh Cir. Pattern Civil Jury Instructions — State Claims, 3.3. Modifying the pattern instructions somewhat, we think the jury should be instructed along these lines:

> A "fiduciary" obligation exists whenever one person—the client—places special trust and confidence in another person—the fiduciary—in reliance that he will exercise his discretion and expertise with the utmost honesty and forthrightness in the interests of the client, such that the client relaxes the care and vigilance which he would ordinarily exercise, and the fiduciary knowingly accepts that special trust and confidence and thereafter undertakes to act on behalf of the client based on such reliance.

> Of course, the mere fact that a business relationship arises between two persons does not mean that either owes a fiduciary obligation to the other. If one person engages or employs another and thereafter directs or supervises or approves the other's actions, the person so employed is not necessarily a fiduciary. Rather, as previously stated, it is only when one party places, and the other accepts, a special trust and confidence—usually involving the exercise of professional expertise and discretion—that a fiduciary relationship arises.

case law extant at the time that Congress enacted section 1346, we conclude that the statute clearly prohibits a scheme or artifice to use the mails or wires to enable an officer or employee of a private entity (*or a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers*) purporting to act for and in the interests of his or her employer (*or of the person to whom the duty of loyalty is owed*) secretly to act in his or her or the defendant's own interests instead, accompanied by a material misrepresentation made or omission of information disclosed to the employer." (emphasis added)).

As we noted in *Williams*, we agree with the Second Circuit that, " '[a]lthough the bulk of the pre-*McNally* honest-services cases involved employees, we see no reason the principle they establish would not apply to other persons who assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity.' " *Williams*, 441 F.3d at 723-24 (quoting *Rybicki*, 354 F.3d at 142 n.17).

**[5]** We therefore hold that a fiduciary duty for the purposes of the Mail Fraud Statute is not limited to a formal "fiduciary" relationship well-known in the law, but also extends to a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise. *See Moon v. Phipps*, 411 P.2d 157, 160 (Wash. 1966). In the case *sub judice*, the contractual term purporting to establish the testers as "independent contractors" for avoiding state vicarious civil liability does not foreclose the legal determination that an agency relationship or a relationship of trust existed between the State of Washington and Milovanovic and Lamb. The definition of "fiduciary" is certainly flexible enough to encompass the situation here. The State entrusted Milovanovic and Lamb to honestly and truthfully administer the written and skills tests and to interpret and certify the results. The defendants well knew that the State relied on their fidelity in

administering and translating the tests in order to grant CDLs to applicants.

We do not rest our decision on their status as independent contractors in deciding whether a fiduciary duty did, in fact, exist between the State and both Milovanovic and Lamb. A motion to dismiss the indictment is not "a device for a summary trial of the evidence." *Boren*, 278 F.3d at 914. It is within the province of the trier of fact to determine after hearing the evidence whether a fiduciary duty exists between the parties based on a position of trust, for the material breach of which the victim was defrauded of the entitlement to honest services by the defendants. We are satisfied that the superseding indictment sufficiently alleges a breach of a position of trust both to honestly and fairly administer tests and to truthfully certify to the State applicants residing in Washington who are qualified to be commercial vehicle operators. We do not decide whether Milovanovic—a third-party tester whose contract was with a translation services company, not the State—or Lamb—whose contract was directly with the State —did, in fact, owe a fiduciary duty to the State of Washington. That is for the jury to decide, as properly instructed on the elements which constitute reposing a special trust that requires honest administration of tests and truthful reports of their results. *See supra* pp. 5621-23 & n.9. But if the United States can prove what it has alleged, as a matter of law a jury may convict the defendants as charged if the evidence shows material misrepresentations were intentionally made, in return for bribes, well knowing that the DOL would rely on those representations to issue CDLs to applicants who were not qualified to obtain them.

The Seventh Circuit, in analyzing a situation similar to the one presently before us, recognized an agency trust relationship in *United States v. Lupton*, 620 F.3d 790 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1544 (2011). There, the contract declared Lupton to be an "independent contractor," but the scheme involved undisclosed kickbacks by a commercial real

estate broker hired by the State of Wisconsin to help sell an estimated $30 million worth of public buildings. *Id.* at 793. As in *Lupton*, the mere fact that the contracts purported to label Milovanovic and Lamb as independent contractors does not defeat the application of the Mail Fraud Statute. The question of agency for purposes of criminal liability is a question of law that may not be contracted away by parties to a contract. *See id.* at 800-01 ("Parties cannot contract around definitions provided in criminal statutes . . . . [P]rivately agreed upon 'employment labels,' like the 'independent contractor' . . . may bring some employment relationships *within* the sphere of agency status but they do not necessarily squeeze all other employment relationships *out* of that sphere." (emphasis in original) (internal citations and quotation marks omitted)); *see also* Restatement (Third) of Agency § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling.").

**[6]** There is no question that were Milovanovic and Lamb employees of the State of Washington, they would be subject to prosecution for theft of honest services. *See Bohonus*, 628 F.2d at 1172 (holding that "a scheme to defraud an employer of loyal service is prohibited under § 1341 provided the mails were used in furtherance of the scheme and specific intent . . . is shown"). We see no reason why Milovanovic and Lamb should be treated differently simply because the terms of their contracts label them independent contractors. Because allegations in the indictment, which we must take as true for the purposes of this appeal, assert that the State, through outsourcing the work to private contractors, reposed a special trust in Lamb and Milovanovic to ensure the integrity of the testing of CDL applicants, and thus relied on the provision of their honest services in administering the tests and certifying the results, we hold that a jury could find that Milovanovic's and Lamb's conduct falls within the ambit of §§ 1341 and 1346.

Milovanovic argues that his relationship to the State is too attenuated to give rise to a heightened duty and, as a result,

that the superseding indictment fails to allege that he violated the Mail Fraud Statute. Milovanovic's argument, however, ignores his alleged role as an aider and abettor in assisting Lamb to defraud the State by procuring fraudulent CDLs. He is accused of soliciting the bribes, paying Lamb to falsify the skills test results, helping applicants cheat on the written portions of the test, and providing in-state addresses to nonresident applicants. *See* 18 U.S.C. § 1349 ("Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."); *see also* 18 U.S.C. § 2 ("(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."). The same applies to defendants Hot, Kovacic, Bilanovic, and Djordjevic. *See United States v. Urciuoli*, 613 F.3d 11, 17-18 (1st Cir.) ("[N]othing in *Skilling's* language or context suggests that the Court was distinguishing between the fiduciary who received the bribe and the non-fiduciary who gave it, a distinction that would conflict with the statute's language embracing those who participate in 'any scheme . . . to defraud.' " (alteration in original) (citing 18 U.S.C. §§ 2, 1341), *cert. denied*, 131 S. Ct. 612 (2010)).

The defendants also argue that if we do not confine §§ 1341 and 1346 to apply solely to formal fiduciaries, there is a risk that any party to a contract is susceptible to prosecution under §§ 1341 and 1346. We disagree with that premise and find persuasive the concurring opinion of Circuit Judge Reena Raggi and her analysis of the Mail Fraud Statute in *Rybicki,* 354 F.3d at 148-55 (Raggi, J., concurring).[10]

---

[10]Because we consider in the instant case the application of § 1346 in a contractual situation—an issue the majority in *Rybicki* did not consider,

Our reading of § 1341 in conjunction with § 1346 suggests that there are six limitations to the conduct susceptible to prosecution under the otherwise broad reach of the Mail Fraud Statute. First, there must be a legally based, recognized "enforceable right to the services at issue." *Id.* at 153. Second, "[w]hat distinguishes 'honest services' from the general provision of labor, skill, or advice is that the value of the particular services at issue largely depends on their being performed honestly, that is, without fraud or deception." *Id.* The Mail Fraud Statute, therefore, reaches those who deprive another of services, the value of which depends on them being performed honestly. Third, deprivation of those services must be in breach of a formal or informal fiduciary duty. *See Skilling*, 130 S. Ct. at 2930 ("The 'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." (citation omitted)). Fourth, under the plain text of the statute, the defendant must have a specific intent to defraud. *See* 18 U.S.C. § 1341 ("Whoever, *having devised or intending to devise any scheme or artifice to defraud . . . .*" (emphasis added)); *see also United States v. Kincaid-Chauncey*, 556 F.3d 923, 941 (9th Cir. 2009) ("Th[e] specific intent requirement for honest services fraud survives *McNally* by virtue of § 1346 and is necessary to distinguish legal conduct from honest services fraud." (citations omitted)). Fifth, the defendant must "misrepresent or conceal a material fact," *Rybicki,* 354 F.3d at 153

*see Rybicki*, 354 F.3d at 144 n.18—we are persuaded by the reasoning set forth by Judge Raggi in her concurrence, which specifically addressed the application of the Mail Fraud Statute in contractual situations and contemplated its effect on the precise factual scenario here. *See id.* at 155 (Raggi, J., concurring) ("Today's case presents us with honest services fraud in the context of an employer-employee relationship. But a future case may require us to consider whether there is any principled reason to distinguish between an employee and an arms-length contractor when they engage in identical fraud schemes with the specific intent to deprive a victim of services whose value depends upon honest performance—for example, providing a due diligence report, a compliance certification, or an environmental assessment."). We now have that "future case" before us.

(Raggi, J., concurring). And, finally, "mails or wires must be used to further the scheme." *Id.*

**[7]** We therefore hold that the "intangible right to honest services" in § 1346, as devised by Congress, encompasses situations such as the conduct alleged here.

## C

**[8]** Finally, the district court determined that "the better reasoned cases are those requiring an identifiable economic harm." We disagree. Foreseeable economic harm is not a necessary element when evaluating whether a party breached a fiduciary duty in violation of honest services fraud under §§ 1341 and 1346. Rather, because there is no requirement in an honest services fraud case that economic loss be foreseeable, we join the Second, Fifth, Eighth, and Tenth Circuits in adopting the "materiality test." *See Rybicki*, 354 F.3d at 145-47 (maj. op.); *United States v. Gray*, 96 F.3d 769, 774-76 (5th Cir. 1996); *United States v. Jain*, 93 F.3d 436, 441-43 (8th Cir. 1996); *United States v. Cochran*, 109 F.3d 660, 667-69 (10th Cir. 1997). We agree with our sister circuits "that § 1346 must be read against a backdrop of the mail and wire fraud statutes, thereby requiring fraudulent intent and a showing of materiality."[11] *Cochran*, 109 F.3d at 667 (citing *Jain*, 93 F.3d at 442).

**[9]** Thus, we hold "that the misrepresentation or omission at issue for an 'honest services' fraud conviction must be 'material,' such that the misinformation or omission would

---

[11]In fact, this is acknowledged in the Ninth Circuit's Model Criminal Jury Instructions, which, subsequent to the district court's decision in this case, added a materiality element to the honest services instruction. *See* 9th Cir. Model Crim. Jury Instr. 8.123 & cmt. (2010) ("The materiality element was included in [the Mail Fraud] instruction based on the presumption that Congress intended to incorporate the well-settled meaning of the common-law term 'fraud' into the mail, wire, and bank fraud statutes." (citing *Neder v. United States*, 527 U.S. 1, 22-23 (1999))).

naturally tend to lead or is capable of leading a reasonable employer to change its conduct." *Rybicki*, 354 F.3d at 145 (citation omitted). Limiting fraud, for the purposes of the Mail Fraud Statute, only to deprivation of property or money would fail to "acknowledge[ ] the reality of fraud, a crime of extraordinary variety, limited only by human imagination." *Id.* at 155 (Raggi, J., concurring) (citing *United States v. Altman*, 48 F.3d 96, 102 (2d Cir. 1995) ("holding that fraud needs no definition: 'it is as old as falsehood and as versable as human ingenuity' ")).

**[10]** In the instant case, Milovanovic's and Lamb's scheme to defraud deprived the State of Washington of the provision of honest services, not money or property. The DOL entrusted Milovanovic and Lamb to administer the tests without rigging the results and to ensure that only Washington residents who successfully qualified to safely drive a commercial vehicle on public highways received a CDL. In reliance on those services and their certifications, the State was induced to issue CDLs sought by unqualified applicants who did not reside in Washington. Milovanovic's and Lamb's alleged dishonest provision of those important services, resulting from bribery, is exactly the type of conduct §§ 1341 and 1346 were intended to proscribe.

We do not need to decide whether in a private sector case there might be a requirement that economic damages be shown. Because this case involves honest services fraud committed against the public for which no economic damages need be shown, we leave that question to another day.

### D

**[11]** In light of our ruling, the district court erred in dismissing the superseding indictment charging the defendants with a bribery-based scheme to defraud because the indictment tracks the language of the Mail Fraud Statutes. *See United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) ("In

cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." (citation and internal quotation marks omitted)). All of the elements of honest services mail fraud are present in the superseding indictment, which alleges that:[12] (1) the defendants devised a scheme or artifice with the intent to defraud the State of Washington DOL; (2) the State and the public were thereby deprived of the intangible right of honest services through soliciting and accepting bribes; (3) the resulting false test results were material misrepresentations to the DOL; and (4) the defendants used the mails to further the fraudulent scheme.

Although the word "fiduciary" is not mentioned in the superseding indictment, which was issued before the Supreme Court decided *Skilling*, the indictment fairly read alleges that Milovanovic and Lamb breached an implicit fiduciary duty of trust as test administrators and interpreters. *See United States v. deVegter*, 198 F.3d 1324, 1330 (11th Cir. 1999); *see also United States v. Awad*, 551 F.3d 930, 935-37 (9th Cir. 2009); *Davis*, 336 F.3d at 923-24. For example, the indictment alleges that Lamb contracted with the State and was certified by the DOL to administer driving skills tests for CDL appli-

---

[12]The superseding indictment charges:

> Brano Milovanovic, Tony Gene Lamb, Ismail Hot, Muhamed Kovacic, Elvedin Bilanovic, and Aleksandar Djordjevic devised a scheme and artifice to defraud, to deprive another of the intangible right of honest services, in which the mails were caused to be used, to defraud and deceive the Washington Department of Licensing (DOL) by obtaining CDLs through materially false and fraudulent misrepresentations and omissions based on CDL applications supported by successful CDL written examinations that resulted from cheating on the exam, by signing Form DLE-520-320 reflecting the successful completion of a skills test when no such test was completed, and by using in-state addresses in Spokane, Washington when the applicant in fact resided out of state.

cants. The indictment further alleges Lamb breached the State's trust to administer the tests honestly through bribery by: (1) failing to maintain accurate CDL Tester Logs; (2) signing the "Skills Test Results" for applicants who had not, in fact, successfully passed the CDL skills examination; (3) mailing or faxing his falsified CDL testing logs to the DOL in Olympia purportedly to remain in compliance with the DOL rules and regulations; and (4) as part of the scheme and artifice to defraud, falsifying the skills test results every time he tested Bosnian-speaking applicants arranged by Milovanovic.

Similarly, the indictment alleges that Milovanovic solicited and accepted bribes, split them with Lamb, and helped applicants to cheat by supplying the answers to the test questions during the exam by either telling them the correct answers or using hand signals. The fact that Milovanovic contracted with a translation services company and not directly with the State is not determinative. The independent contractor relationship with the government in situations such as here, where the independent contractor provides services to ensure public safety well knowing the State is relying upon his faithful service, necessitates a higher level of trust that weighs in favor of finding a fiduciary duty.

**[12]** Consequently, the district court should have denied the joint motion to dismiss the superseding indictment because the indictment states an offense for honest services mail fraud, adequately informs the defendants of the charges against which they must defend, and enables the defendants to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Davis*, 336 F.3d at 922.

V

We hold that a fiduciary relationship is an element of honest services fraud under 18 U.S.C. §§ 1341 and 1346, but that the fiduciary relationship need not be a formal, or classic,

fiduciary relationship. Rather, §§ 1341 and 1346 similarly reach those who assume a comparable duty of loyalty, trust, and confidence, the material breach of which, with the intent to defraud, deprives the victim of the intangible right to honest services.

We further hold that foreseeable risk of economic harm is not a necessary element when evaluating whether a party breached a fiduciary duty in violation of the honest services fraud statutes, §§ 1341 and 1346. We adopt, instead, the materiality test and hold that the Mail Fraud Statute requires fraudulent intent and a showing of materiality.

Finally, we hold that the superseding indictment charging the defendants with a bribery-based scheme to defraud, tracking the statutory language of 18 U.S.C. §§ 2, 1341, 1346, and 1349, properly states an offense for honest services fraud.

**REVERSED** and **REMANDED** for further proceedings consistent with this Opinion.

---

CLIFTON, Circuit Judge, concurring in the judgment:

The most recent edition of Black's Law Dictionary, after providing a definition for the term "fiduciary," repeats an observation made nearly 50 years ago:

> "'Fiduciary' is a vague term, and it has been pressed into service for a number of ends. . . . My view is that the term 'fiduciary' is so vague that plaintiffs have been able to claim that fiduciary obligations have been breached when in fact the particular defendant was not a fiduciary *stricto sensu* but simply had withheld property from the plaintiff in an unconscionable manner." D.W.M. Waters, *The Constructive Trust* 4 (1964).

Black's Law Dictionary 702 (9th ed. 2009).

"Fiduciary" has not gotten any clearer in the half-century since then, and our decision here does not help. We accede to the agreement of the parties that the Supreme Court defined a breach of fiduciary duty as an essential element required for honest services mail fraud in *Skilling v. United States*, 130 S. Ct. 2896, 2930-31 (2010). But we conclude that "fiduciary" here does not mean a "formal, or classic, fiduciary duty." Majority op. at 5619. Rather, we hold that a fiduciary duty as an element of mail fraud "is not limited to a formal 'fiduciary' relationship well-known in the law, but also extends to a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." *Id.* at 5623.

I agree completely with the result reached by the majority, and I agree that *Skilling* did not limit honest services mail fraud to a formal fiduciary relationship.[1] But we should not muddy the meaning of "fiduciary" any further by employing it here to mean something other than "fiduciary." By doing so we further devalue the term and invite that much more confusion as to what the word means in other situations. In some

---

[1]To be fair, the majority opinion adopts the term "fiduciary" here only because it concludes, as the parties have both urged, that the Supreme Court adopted it as an essential element of honest services mail fraud in *Skilling*. I understand that *Skilling* can be read that way, but the presence of a fiduciary relationship was not at issue in that case. Skilling, a corporate officer and employee, unquestionably had a fiduciary duty. His conviction was reversed because the Court concluded that the statute was properly confined to cover only bribery and kickback schemes, and his alleged misconduct entailed no bribe or kickback. I do not believe that the Court's accurate observation that "[t]he 'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes," *id.* at 2930, necessarily incorporated a fiduciary duty as an essential element. If it did, then my plea is to the Court to use some term other than "fiduciary" the next time it visits the issue, unless it actually means to use the term in its "formal or classic" sense.

contexts, after all, the term "fiduciary" is intended to mean "fiduciary," not our variation on that concept. We should instead simply define the essential element for honest services mail fraud as the trusting relationship described in the majority opinion and leave the word "fiduciary" out of it.