FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>MELVIN RUSSELL "RUSTY" SHIELDS,<br>*Defendant-Appellant.* | No. 14-10561<br><br>D.C. No.<br>5:12-cr-00410-<br>RMW-1 |
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>MICHAEL SIMS,<br>*Defendant-Appellant.* | No. 14-10562<br><br>D.C. No.<br>5:12-cr-00410-<br>RMW-2<br><br>OPINION |

Appeals from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted October 20, 2016
San Francisco, California

Filed December 21, 2016

Before:  A. WALLACE TASHIMA and MILAN D.
SMITH, JR., Circuit Judges, and EDWARD R.
KORMAN,[*] Senior District Judge.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Criminal Law

The panel affirmed Melvin Shields's and Michael Sims's convictions arising from the capitalization and operation of their real estate development business, which lost millions of investors' dollars.

The panel held that the district court erred by failing to instruct the jury that it must find a duty to disclose in order to convict defendants of wire fraud based on any material omissions, but that this was not reversible plain error because the instruction was not clearly required by this court's precedent and the error most likely did not affect the outcome of the proceedings.

The panel rejected the defendants' remaining challenges to their convictions in a concurrently-filed unpublished memorandum disposition.

---

[*] The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Erick Guzman (argued), Santa Rosa, California, for Defendant-Appellant Melvin Russell Shields.

Ethan Atticus Balogh (argued) and Evan C. Greenberg, Coleman & Balogh LLP, San Francisco, California, for Defendant-Appellant Michael Sims.

Annie M. Voigts (argued), Assistant United States Attorney; Barbara J. Valliere, Chief, Appellate Division; Brian J. Stretch, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee United States.

## OPINION

M. SMITH, Circuit Judge:

Melvin Shields and Michael Sims appeal their jury convictions following a joint trial arising from the capitalization and operation of their real estate development business, which lost millions of investors' dollars from 2007 to 2009. Shields was convicted on 32 counts, including conspiracy, wire fraud, bank fraud, securities fraud, and making a false statement to a bank. Sims was convicted on two wire fraud counts. Defendants challenge their convictions based on several claimed trial errors, including admission of prejudicial evidence, failure to sever the joint trial, ineffective assistance of counsel, inadequate jury instructions, and denial of the right to be present at a critical stage. We affirm.

Although we hold that the district court erred by failing to instruct the jury that it must find a duty to disclose in order to convict defendants of wire fraud based on a material omission, that omission was not reversible plain error.

In an unpublished memorandum disposition filed concurrently with this opinion, we reject the defendants' remaining challenges to their convictions.

## FACTS AND PRIOR PROCEEDINGS

In 2006, Melvin Shields, Michael Sims, and Sam Stafford founded S3 Partners LLC, a real estate development business. The men claimed to be "three veteran entrepreneurs, each with a track record of success in his chosen field," and from 2007 to 2009 they collectively solicited and obtained millions of dollars from investors, allegedly to fund various real estate projects. Shields focused primarily on managing the money raised, Sims on soliciting investors, and Stafford on real estate development. Ultimately, the S3 projects all failed, relationships among the partners soured, and the investors received little or no return on their investments. Shields asserts that this occurred because of the collapse of the real estate market in 2008; Sims claims that the failures were caused by his partners' malfeasance; and the government asserts that the failures were caused by the partners' fraudulent practices of lying to investors and diverting invested funds.

This appeal arises out of two of the S3 projects, respectively known as Stagecoach and Alafia. In January 2007, Stagecoach began developing retail units at a shopping center in Arizona. Although investors were solicited to invest in Stagecoach, only a portion of the investor funds and a bank loan obtained for Stagecoach were actually spent on

the Stagecoach project; the balance of the funds was used for other projects and general S3 expenses. Alafia was formed in July 2007 for the purpose of buying and expanding an existing assisted living facility in Florida. Potential investors were promised that an investment in Alafia was safe and secure, that they were guaranteed a 15% annual return on their investments, and that they would own the assisted living facility as tenants in common. However, before final ownership documents were signed by the investors, the owner of the Alafia facility refused to sell the assisted living facility to S3, so the purchase could not be consummated. Notwithstanding that fact, S3 used the funds solicited and collected for the Alafia project to fund other S3 projects, and unrelated expenses.

The government filed a 40-count superseding indictment against the S3 partners on September 18, 2013, accusing them of conspiracy, wire, mail, securities, and bank fraud; and making false statements to a bank. Stafford pleaded guilty to the conspiracy count and agreed to testify at trial. Shields and Sims were jointly tried on 39 counts, and on December 23, 2013 a jury convicted Shields on 32 counts and Sims on 2 counts. Shields and Sims were sentenced to seventy-eight and thirty months in prison, respectively, and each timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## ANALYSIS

## I. The District Court Erred by Failing to Instruct the Jury on the Duty to Disclose In Order for a Material Omission to Support a Wire Fraud Conviction.

Defendants argue that their wire fraud convictions should be reversed because the court erred in not instructing

the jury that in order to find defendants guilty based on a material non-disclosure, it must first find that defendants had a duty to disclose the omitted information.**[1]**   Defendants claim that this could have affected the verdict because the government relied on omissions as stand-alone examples of fraud, and because they did not have relationships with their investors that would support a duty to disclose.

Defendants are correct that "[a] nondisclosure [] can support a [wire] fraud charge only when there exists an independent duty that has been breached by the person so charged." *Eller v. EquiTrust Life Ins. Co*., 778 F.3d 1089, 1092 (9th Cir. 2015) (internal quotation marks omitted); *see also Chiarella v. United States*, 445 U.S. 222, 230 (1980) (holding, in a securities fraud case, that "a relationship of trust and confidence" is required to create a duty to disclose);

---

**[1]**The jury instructions for wire fraud required that the jury find:

> (1) "the defendant knowingly participated in a scheme or plan to defraud . . . with all of you agreeing on at least one particular false or fraudulent pretense, representation, or promise that was made";

> (2) "the statements made *or facts omitted* as part of the scheme were material";

> (3) "the defendant acted with the intent to defraud"; and

> (4) "the defendant used or caused to be used a wire communication to carry out or attempt to carry out an essential part of the scheme."

(Emphasis added).

*United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds sub nom Dowling v. United States*, 473 U.S. 207 (1985) (holding that "a non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged," such as a fiduciary or statutory duty).**[2]** Similarly, in *United States v. Laurienti*, 611 F.3d 530, 543 (9th Cir. 2010), we held that a jury must find that a broker had a "trust relationship" with his client for non-disclosure of bonus commissions to support a securities fraud conviction, and that the district court erred by not instructing on this element. Finally, in *United States v. Milovanovic*, 678 F.3d 713, 723–24 (9th Cir. 2012), we explained that the term "fiduciary" is a broad one in the honest services mail fraud context, encompassing "informal," "trusting relationship[s] in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." Further, "[t]he existence of a fiduciary duty . . . is a fact-based determination that must ultimately be *determined by a jury properly instructed on this issue*." *Id.* at 723 (emphasis added).

In light of such precedents, we conclude that it was error to not instruct the jury that it must find a relationship creating a duty to disclose before it could conclude that a material non-disclosure supports a wire fraud charge. We adopt the definition of such a relationship identified in *Milovanovic* and apply it to wire fraud charges when an omissions theory of fraud is alleged. Specifically, the relationship creating a duty to disclose may be a formal fiduciary relationship, or an

---

**[2]** *Dowling* concerns mail fraud, but "[i]t is well settled that cases construing the mail fraud and wire fraud statutes are applicable to either." *United States v. Shipsey*, 363 F.3d 962, 971 n.10 (9th Cir. 2004).

"informal," "trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." *Id.* at 723–24.  This is a factual determination to be made by a properly-instructed jury.  *Id.* at 723.  Although the jury in this case was not instructed on the need for a duty to disclose, we affirm the wire fraud convictions nonetheless because the omission was not reversible plain error.

## II.  Plain Error Analysis

Defendants did not request jury instructions on a duty to disclose, nor object to the instructions actually presented to the jury at trial, so we review for plain error.  *United States v. Fuchs*, 218 F.3d 957, 961 (9th Cir. 2000).  "A trial court commits plain error when (1) there is error, (2) that is plain [*i.e.*, "clear and obvious"], and (3) the error affects substantial rights [*i.e.*, "affects the outcome of the proceedings"]."  *Id.* at 962.  "We may exercise our discretion to notice such error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.*  For example, we held in *Fuchs* that a failure to instruct on the statute of limitations was plain error in a conspiracy case.  *Id.* at 962.  The error was plain in *Fuchs* because the instruction was clearly required by Supreme Court precedent and defendants had previously moved to dismiss the indictment on statute of limitations grounds.  *Id.* The error affected substantial rights in *Fuchs* because "the acts that most strongly support[ed] a finding of conspiracy fell outside the statute of limitations."  Accordingly, we reversed because "[a]llowing defendants' convictions to stand, given the likelihood that the jury may not have convicted had [it] been properly instructed, would be a 'miscarriage of justice.'"  *Id*. at 963.

In contrast, the error in this case was not plain. The district court's instructions were based on the Ninth Circuit Model Jury Instructions for wire fraud (instruction 8.124), which did not include a duty to disclose instruction, and allowed for conviction based on material omissions. The district court followed the Model Instructions, the defendants did not object, and there was then no controlling case law stating that there was a duty to disclose in order to convict for wire fraud where a material omission was involved. Thus, the error was not "clear and obvious."

It is also unlikely that the error affected the outcome of the proceedings because a jury convicting based on defendants' material omissions would most likely have concluded that relationships existed among the defendants and investors wherein defendants (1) purportedly acted for the benefit of investors, and (2) "induce[d investors] to relax [their ordinary] care and vigilance." *Milovanovic*, 678 F.3d at 724.

Defendants' appellate briefs claim that the government's focus on non-disclosure of their previous personal bankruptcies may have impermissibly supported their convictions. In summation, the government stated that, while a bankruptcy is "not [] a terrible moral failing or . . . wrong . . . standing by itself," in light of (1) their representations to investors that they were authorities in investing, and (2) the fact that the testifying investors said that knowing about the bankruptcies would have affected their decisions to invest, the omission "*standing by itself was an example of fraud*." (Emphasis added). If a jury concluded that this omission was material (*i.e.*, pursuant to the jury instructions it was "capable of influencing a person to part with money"), the jury would have likely concluded that defendants presented their financial histories to

investors in a positive light to convince investors to trust defendants with their money, making a trusting relationship likely.

Additionally, the error most likely did not affect the outcome of the proceedings because other affirmative acts also support the convictions. Specifically, the record shows that Sims misled Alafia investors by affirming the accuracy of a misleading brochure, stating that investors were guaranteed a 15% annual return on their investments, and that the project was viable. The record also reflects that Sims misled Stagecoach investors by soliciting an investment specifically for Stagecoach, but then immediately diverting the money into his company's account and spending it to reimburse his company for S3 expenses, including an interest payment to his daughter. Moreover, Sims testified that he knew in advance that he was going to spend the money he received from the investors, that he did not inform the investors of his intentions, and that he knew he thereby erred. The record also reflects that Shields solicited investors' funds for specific projects, and led investors to believe that their money would be used for such projects, when Shields (the primary S3 money manager) clearly knew and intended that the funds would be comingled with other projects and used for S3 expenses and other purposes.

## CONCLUSION

We conclude that the district court erred by not instructing the jury that it must find a relationship creating a duty to disclose in order to convict defendants of wire fraud based on any material omissions. We hold that, in order for an omission to support a wire fraud charge, the jury must be instructed that it must first find that the defendant and the defrauded party had a "trusting relationship in which [the

defendant] act[ed] for the benefit of another and induce[d] the trusting party to relax the care and vigilance which it would ordinarily exercise." *Milovanovic*, 678 F.3d at 724.

However, we **AFFIRM** the district court, because this was not reversible plain error. The error was not "clear and obvious" because it was not clearly required by our precedent, and the error most likely did not affect the outcome of the proceedings.